BOYCE v. UNITED STATES FIDELITY & GUARANTY CO. OF
MARYLAND.

(Circuit Court of Appeals, Sixth Circuit.    October 8, 1901.)

No. 918.

1. BANKRUPTCY—CREDITOR ENTITLED TO FILE PETITION—BREACH OF CONTRACT.
A contract with a city for public work fixed a time by which the
work should be completed, and provided that, if the contractor should
fail to commence or proceed with the work to the satisfaction of the
trustees having it in charge, such trustees should have the right, on
notice, to declare the contract forfeited and cancel the same.    The con-
tractor entered into a contract with the surety on his bond by which he
agreed to indemnify the surety against any loss by reason of his de-
fault, and that in case of his default on breach of the contract the surety
should be subrogated to his rights therein, and might use the contract-
or's property and equipment for the purpose of completing the work.
The trustees declared that the progress of the work was not satisfac-
tory, and after due notice declared the contract forfeited and annulled.
They afterwards permitted the surety to complete the work, in doing
which it incurred a considerable expense above the price received.    Held
that, under the power given the trustees by the contract, their decision
that the work was not proceeding satisfactorily and with reasonable
expedition was conclusive on the contractor, in the absence of evidence
that they acted fraudulently, and authorized his surety under the con-
tract of indemnity to assume charge of the work, and that the surety
thereby became his creditor for the amount of the loss it sustained, and
entitled to maintain a petition against him in involuntary bankruptcy.

2. CONTRACTS—CONSTRUCTION—POWER TO DECLARE FORFEITURE.
A stipulation in a contract with a city for public work for the payment
of a fixed sum per day for any delay in the completion of the work be-
yond the time stated, as liquidated damages, is not inconsistent with
and does not abrogate a further provision giving the city the power to
declare the contract terminated for delay in the progress of the work
before the time fixed for its completion, and in such case the city has
its election.

3. SAME—SUFFICIENCY OF NOTICE.
Under a contract with a city for public work which gave the city
the power to terminate the same if not satisfied with the progress of the
work, in case the delay continued after 10 days' notice to the contractor,
such notice was not required to contain a positive statement that a for-
feiture would be declared; nor could the contractor object that a for-
feiture was declared within 10 days after the notice was given, where
in the meantime he had entirely abandoned the work.

Appeal from the Circuit Court of the United States for the South-
ern District of Ohio.

This is an appeal from a decree adjudging the appellant a bankrupt upon
the petition of the appellee, which claims to be a creditor.    The pivotal ques-
tion in the proceeding in the district court was whether the petitioner was in
fact a creditor of the alleged bankrupt; and this turned upon certain facts
involved in the performance of a contract made by the appellant with the
city of Cincinnati for the execution of certain work in the city, consisting of
grading, draining, macadamizing, and revetment of slopes and masonry on
the grounds of the city's waterworks.    The due performance of this con-
tract on the part of the appellant was guarantied by the appellee company,
which, upon the alleged default of the appellant, took over the contract
from the city and completed it, incurring therein an expenditure of as much
as $22,000, for which sum it claimed to be a creditor of the appellant, and
so entitled to file the petition in bankruptcy.    The contract was made on
June 2, 1899.    The guaranty was made at the same time, and constituted

part of the same transaction. The writings are very lengthy, and only so much thereof will be here referred to as relates specially to the matters involved in the controversy, and is necessary to its determination by the court. By its terms the contract required the work to be completed by the 1st day of January, 1900, and provided that, if the contractor should fail to perform it by that time, he should forfeit $50 for each day thereafter while he was in default, which it was declared should be taken and treated as liquidated damages, and not as a penalty. It contained also the following stipulations: "That in case said contractor shall become insolvent or be declared bankrupt, or shall, from any cause whatsoever, other than any arising from the acts of the trustees, be prevented from or be delayed in proceeding with and completing the work according to this contract, or shall fail to commence or proceed with the work to the satisfaction of the said trustees, it is agreed that said trustees may give, or cause to be given, notice or notices in writing to said contractor. * * * And, in case said contractor shall for ten (10) days after any such notice fail to commence or regularly proceed with the work to the satisfaction of said trustees, all rights of the said contractor under this contract shall thereupon terminate; and it is agreed that said trustees may declare this contract, as to any and all rights of said contractor thereunder, forfeited, annulled, and wholly canceled, and take away, hold, and complete said work by reletting the unfinished part thereof, or completing the same by day work or otherwise, as may be for the best interest of the said first party in the judgment of said trustees. And said trustees shall have the right to apply any sum due or which may become due and payable to said contractor under the terms hereof to the completion of said work, and said contractor shall be liable for any and all damages, loss, costs, or expense incurred and sustained by the said first party by reason of the neglect, refusal, or failure of the said contractor to keep and perform all the conditions and covenants hereof; and in case this contract, or any alteration or modification thereof, be thus terminated, the decision of said trustees, predicated upon the opinion of the chief engineer, shall be conclusive, and said contractor shall not be entitled to claim or receive any compensation or damages for not being allowed to proceed." Section 2c provides: "During the progress of the work, monthly estimates shall be made by the chief engineer of the total relative value of the work done to the time of such estimates. Of the amount of such estimates, the trustees shall retain twenty (20) per cent., as part security for the fulfillment of the contract by the contractor. On or before the 15th day of each month the trustees shall pay to the contractor the amount not retained as aforesaid, after deducting therefrom all previous payments and all other amounts to be kept or retained under the provisions of this contract." It further provides: "Payments may be withheld if the work is not proceeding in accordance with the contract." The contract of indemnity given to the appellee and signed by appellant provides: "And I do further agree, in the event of any breach or default on my part of the provisions of the contract hereinbefore mentioned, that the United States Fidelity and Guaranty Company, as surety upon the aforesaid bond, shall be subrogated to all my rights and properties as principal in said contract, and that deferred payments and any and all moneys and properties that may be due and payable to me at the time of such breach or default, that may thereafter become due and payable to me on account of said contract, shall be credited upon any claim that may be made upon the United States Fidelity and Guaranty Company under the bond above mentioned." Said contract also contains the following stipulation: "And I do hereby bind myself * * * to indemnify the said the United States Fidelity and Guaranty Company against all loss, costs, damages, charges, and expenses whatever, resulting from any act, default, or neglect of mine, that said the United States Fidelity and Guaranty Company may sustain or incur by reason of its having executed said bond or any continuation thereof. And I do further agree, in the event of my being unable to complete or carry on the aforementioned contract, to assign such plant as I may own or have upon said work to the said the United States Fidelity and Guaranty Company, that it may use same in the prosecution of said contract to completion."

The appellant proceeded, directly after the contract was made, with its execution. But his progress was, in the opinion of the city engineer, so slow as to make it unlikely that the work would be completed by the date stipulated; and on the 23d of August that officer addressed to the board of trustees the following communication:

"Gentlemen: The principal part of E. C. Boyce's contract is the paving of the slope adjoining the Little Miami river. The quantity of paving required is 8,100 cubic yards, amounting to $21,870. The total estimated cost of all work embraced in his contract is $35,476. The paving amounts, therefore, to nearly two-thirds of the entire work. Only 100 cubic yards of paving have been laid. This was done in July. No paving has been laid since. To complete his work by January 1, 1900, as he has agreed to do, Mr. Boyce must lay not less than 2,000 cubic yards per month; and the safer plan would be to lay 3,000 cubic yards per month, because the conditions of the river may be such that this work could not be done during December. If the paving is not completed this fall, the grading of the slope, estimated at $6,750, upon which Mr. Boyce has already been paid $3,233, may be entirely lost. I respectfully call your attention to these facts, that you may take such action as you may deem proper to secure the completion of the paving this fall.

"Respectfully,                    G. Bouscaren, Chief Engineer."

On the 25th of August, 1899, the board of trustees passed the following resolution: "Whereas, the chief engineer has reported to this board that said E. C. Boyce is not proceeding with said work in a satisfactory manner, and that the probabilities are that the same will not be completed at the time limit fixed in the contract,"—and, providing that notice be served upon Boyce, resolved "that it is the intention of this board at the expiration of an additional ten days to cancel said contract * * * unless the said E. C. Boyce can show to the satisfaction of this board that it is his intention to prosecute said work more vigorously in the future, to the end that the same may be finished at the time fixed in the contract," which was personally served on the appellant on the 28th day of the same month.

On September 8, 1899, the engineer presented to the board the following further communication:

"Gentlemen: I beg to advise you that no better progress is being made by E. C. Boyce on his work at California than obtained before August 28th, when a notice was served on him by direction of your board. He is now doing no work on the riprap and paving, and has no material on hand for that work.

"Respectfully,                    G. Bouscaren, Chief Engineer."

Thereupon the commissioners of waterworks (the board of trustees being such commissioners) on the 12th of September, 1899, adopted a similar resolution to that of August 25th, above recited, and it was served on the appellant the same day. Three days after this notice was served the appellant abandoned the work, and gave notice that he should not proceed with it. On the 21st of September in the same year the engineer reported to the commissioners of waterworks as follows:

"Gentlemen: I beg to report that E. C. Boyce withdrew all his teams and men from his work on the Miami river bank last Saturday, and that no work has been done by him since. All the work done by him has been measured. If the grading of the Miami slope is to be saved from destruction, it must be protected by paving or riprap before the winter floods. In order to do this, work should be started at once with a large force.

"Respectfully,                    G. Bouscaren, Chief Engineer."

September 22, 1899, the board of trustees adopted the following resolution and the same was served on the appellant:

### "Committee of the Whole.

"Whereas, on the 2d day of June, 1899, this board entered into a contract with E. C. Boyce, of Cincinnati, Ohio, for grading, masonry, drains, macadamizing, and revetment of slopes of a part of the Columbia and New Rich-

mond turnpike, of the Little Miami river bank, and of the railroad branch at California, Ohio; and whereas, said E. C. Boyce was not proceeding with said work in a manner satisfactory to this board, and according to the terms and conditions of the contract entered into with him as aforesaid; and whereas, by reason thereof, and in accordance with the stipulation contained in said contract, notice was served on the 12th day of September, 1899, in person, upon said E. C. Boyce, that unless E. C. Boyce could show to the satisfaction of this board that it was his intention to, and that he would, prosecute said work more vigorously, and in accordance with the terms and conditions of this contract; and, whereas, said E. C. Boyce has wholly failed, since service of the above-mentioned notice, to prosecute said work to the satisfaction of this board, and in accordance with the terms of this contract: Therefore, be it resolved, and this board hereby declares, that by reason of the neglect, refusal, and failure of said E. C. Boyce to keep and perform all the conditions and covenants of his said contract, the same has been broken by him, and that he will be held liable to the city for all damages resulting therefrom."

On the 3d of October, 1899, on the request of the appellee, the trustees adopted a resolution permitting and authorizing the United States Fidelity & Guaranty Company, surety on the bond of said Boyce, to complete the work under the contract in accordance with its terms and conditions.

Testimony was submitted to the district court by the appellant tending to show the reasons for the delay in the progress of the work, and, among other things, it was proven that during the summer, upon the occasion of a sudden rise in the Miami river, the engineer took the appellant's men and teams to build a protection on the river bank to keep the water off the appellant's work, and that this disorganized his force and contributed to the delay. But this was done with the appellant's consent. It was also proven that the parties with whom the appellant contracted for stone failed to deliver it, and that he was thereby embarrassed and delayed. There is no proof in the record that the appellant consented in terms to the forfeiture of the contract by the board of trustees, or the substitution in his place of the guaranty company. But it does appear that, after all this had transpired, he, upon the request of the company, turned over to it his working plant for its use in completing the work; he at the same time repeating his purpose, which he had before declared, of suing the city for damages on account of its refusal to permit him to go on with his contract. Other testimony was submitted on both sides in respect to the progress of the work, and the likelihood of his ability to complete his work by the time specified. Evidence was also introduced by the petitioner tending to show that within four months preceding the filing of the petition the appellant, while insolvent, had transferred the substance of his property to other creditors, with the intent to prefer them. The district judge was of opinion that the petitioner was entitled to be regarded as having been lawfully substituted in the place of the appellant for the execution of the contract which it had guarantied, and had thereby become a creditor; that the acts of bankruptcy were proven as charged; and that the petition should be sustained. The order of adjudication passed accordingly.

John C. Healy, for appellant.

A. W. Goldsmith, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and CLARK, District Judge.

SEVERENS, Circuit Judge, having made the foregoing statement of facts, delivered the opinion of the court.

The contention of the appellant in the case is that his contract with the city was wrongfully terminated by the board of trustees. The argument in this court seems to be based upon the assumption that the district court should have determined whether the fact was so upon original grounds, and that upon appeal we should proceed

in the same way. But an important factor in the case is that, as we understand, no fraud is charged upon the trustees, or, if that is meant to be imputed, there is no evidence which would support the charge. By his contract with the city the appellant consented that the board of trustees should have power to determine whether he was proceeding with reasonable expedition towards the completion of the work. The stipulation is that, if he—

"Shall fail to commence or proceed with the work to the satisfaction of the said trustees, it is agreed that said trustees may give or cause to be given notice or notices in writing to said contractor. * * * And in case said contractor shall, for ten (10) days after any such notice, fail to commence or regularly proceed with the work to the satisfaction of said trustees, all rights of the said contractor under this contract shall thereupon terminate; and it is agreed that said trustees may declare this contract, as to any and all rights of said contractor thereunder, forfeited, annulled, and wholly canceled, and take away, hold, and complete said work by reletting the unfinished part thereof, or completing the. same by day work, or otherwise, as may be for the best interest of the said first party in the judgment of said trustees."

The parties expressly made the completion of the contract by the day named an integral part of the contract and it was clearly the purpose of the above stipulation to secure its full and complete performance in this respect, as well as in others. It would have defeated this purpose, if the city was required to lie by, while the other party was neglecting the work, until the day for completion had been reached. The public interests and convenience might be seriously delayed by tying up the hands of the city after it was demonstrated that the contractor either would not or could not, with his facilities, finish his undertaking within the appointed time; and we are convinced that such considerations were the reason on which it was stipulated that the board of trustees should have power to determine whether the progress of the work gave reasonable ground for expecting the due fulfillment of the work. It is contended by counsel for the appellant that the language of the recited stipulation refers to the manner in which the work was being done, and not to the progress of it. But it is clear that this is not so. There would be no defect in the manner of doing the work if the contractor should "fail to commence" doing it, and the language, "or proceed with the work," which is linked with the other, would be very ill chosen in a power to simply supervise the manner of doing the work. If the design was to provide only for the correction of mistakes or defects in the work as it was being done, we should naturally expect to find language especially adapted to express such a purpose. Doubtless the right construction is that it was intended to clothe the board of trustees with authority to determine all questions relating to the progress of the work, whether in respect to its conformity with the specifications, or to the expedition with which it was being executed. This delegation of authority by the parties to works of construction to pass from time to time as occasion shall arise upon the incidents of its execution is not unusual. Generally it is devolved upon the engineer in charge if there be one; but the same rule applies, whoever may be appointed. And if the appointee, without fraud or manifest mistake, makes a determination

upon any of the matters falling within the scope of the authority committed to him, the parties are bound by the decision. Sweeney v. U. S., 109 U. S. 618, 3 Sup. Ct. 344, 27 L. Ed. 1053; Railroad Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255; U. S. v. Gleason, 175 U. S. 588, 20 Sup. Ct. 228, 44 L. Ed. 284. There being no sufficient ground for finding that there was any fraud or manifest mistake of fact on the part of the board of trustees, the elaborate and able argument addressed to us by counsel for appellant, intended to demonstrate that the board went wrong in its conclusion that the work was not being properly proceeded with, is wasted. That was a question which the appellant agreed to refer to the board, and its decision thereon is final.

It is contended on behalf of the appellant that the stipulation in the contract for a penalty of $50 per day as liquidated damages for delay in executing the contract beyond the time appointed for its performance negatives the right of the city to require any part of the work within any particular period of time, and that he could not be held in default until the full time had elapsed. But this stipulation is entirely consistent with the construction which we put upon the contract. The city might see fit not to demand that the contract should be terminated. The circumstances might be such that it would be deemed expedient for it to allow the work to go on rather than to exercise its election to put an end to it. There is room for both stipulations to stand without conflict.

It is further argued that the notice of the city should have contained a positive statement that it would absolutely forfeit the contract and that a conditional notice is not sufficient. The contract, however, by requiring a notice of 10 days, plainly implies that the contractor should have that time within which to retrieve his default, when, if he did not avail himself of his opportunity, the city could, if it elected to do so, declare the default to be absolute. The notice given conforms to this view.

Another point made is that the city itself was in default for the nonpayment of $1,900 due on an estimate made on the 15th of September. The notice was served on the 12th of that month. The appellant was then continuing his own default: that is to say he was not proceeding with his contract to the satisfaction of the board. By the terms of his contract with the city it was agreed that "payments may be withheld if the work is not proceeding in accordance with the contract"; and, under his contract of indemnity with the guaranty company, this money would go to the company if his default should continue through the 10 days given him for mending matters. By that he agreed:

"That deferred payments and any and all moneys and properties that may be due and payable to me at the time of such breach or default, that may thereafter become due and payable to me on account of said contract, shall be credited upon any claim that may be made upon the United States Fidelity and Guaranty Company under the bond above mentioned."

We do not decide whether in the absence of any controlling stipulations in his contract, the appellant could, for the nonpayment at the day of this estimate, desert the further performance of it.

Lastly the question is raised "whether if the contract requires ten days' notice to authorize a forfeiture, a notice for a less time is effectual." If by this reference is made to the notice itself, we have already answered it, by saying that the notice conforms to the contract. If it is intended to present the inquiry whether the city could declare the contract off before the lapse of ten days after giving the notice, one sufficient answer is that three days after the notice was given him he abandoned the work, and gave distinct notice that he should not proceed with it. Having done this, he is not in position to insist that the full ten days were not given him in which to set himself right. There is no occasion to inquire whether, but for his own course in reference to the prosecution of the work, the time which elapsed after the notice and before the contract was declared forfeited by the city was sufficient.

The evidence leaves no doubt that, as found by the district judge, the appellant, while insolvent, transferred his property to some of his creditors with intent to prefer them.

We think no error is shown by the record, and the order must be affirmed, with costs.