JENKINS, Circuit Judge
(after stating the facts as above). The contract between the parties provided that one-half part of the contract price should be paid “when the plant is running to the satisfaction of the architect, and has been accepted by him.” This clearly constituted him the arbiter of disputes between the parties to the contract with respect to its performance. The general doctrine is not disputed, that, when the payment of the contract price is conditioned upon the obtaining of the umpire’s certificate, such certificate is a condition precedent to the right of the contractor to recover the contract price. The question arises, however, in regard to the right of the contractor when he has specifically and in good faith performed his contract, and the umpire refuses to accept the work or to give the required certificate. The English and early American cases held to the doctrine that the completion of the work to the satisfaction and acceptance of the umpire, or the obtaining of his certificate, is a necessary affirmative act of performance, and that the decision of the umpire can be refuted only for fraud, collusion, or bad faith. The later decisions of the courts of some of the states, of which Thomas v. Fleury, 26 N. Y. 26; Nolan v. Whitney, 88 N. Y. 648; Weeks v. O’Brien, 141 N. Y. 199, 36 N. E. 185; Chism v. Schipper, 51 N. J. Law, 1, 16 Atl. 316,—are examples, hold to the doctrine that the architect, in his relation as umpire, is the agent of the party for whom the work is to be done and for whose benefit the stipulation is made; that, when the work has been specifically and in good faith performed, a refusal to accept or to issue a certificate is unreasonable; and that a recovery may be had upon evidence other than the architect’s certificate of performance. It is not necessary that we should consider the numerous cases to which we have been referred, and which are, perhaps, somewhat in antagonism, because *708 we are bound and precluded from independent judgment by the decisions of the supreme court. The earliest case upon the subject in that court is U. S. v. Robeson, 9 Pet. 319. There the government stipulated to pay under a charter party upon the certificate of the officer commanding the men transported thereunder. A certificate-was given, and payment made for the sum covered by the certificate,, but recovery was sought for other service than that certified to. It was ruled that the obtaining of the certificate was a condition precedent, the court observing with respect to the right of the contractor (page 327):
“He cannot compel the payment of the amount claimed, unless he shall procure the kind of evidence required by the contract, or show that, by time or accident, he is unable to do so; and, as this was not done by the defendant in the district court, no evidence to prove the service, other than the certificates,, should have been admitted by the court. * * * Had the defendant proved that application had been made to the commanding officer for the proper certificates, and that he refused to give them, it would have been proper to-receive other evidence to establish the claim.”
Tbe court treats tbe certificate as evidence of performance, which could be otherwise proven if time or accident prevented tbe obtaining of tbe certificate, or it bad been refused upon application. The-force of this decision is possibly somewhat impaired by tbe rulings in subsequent cases. Kihlberg v. U. S., 97 U. S. 398; Sweeney v. U. S., 109 U. S. 618, 3 Sup. Ct. 314; Railroad Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035; Railroad Co. v. Price, 138 U. S. 185,11 Sup. Ct. 290;. Railway Co. v. Gordon, 151 U. S. 285, 14 Sup. Ct. 343. Tbe doctrine-established by these cases is this: That, with respect to tbe subject-matter submitted to tbe umpire, bis determination is final and conclusive; that it may be impeached only for fraud, collusion, or such gross mistake as would necessarily imply bad faith, or for a failure-to exercise an honest judgment. This is also tbe rule of tbe state-of Illinois, where this contract was made. Canal Trustees v. Lynch,. 5 Gilman, 521; McAuley v. Carter, 22 Ill. 53; Coey v. Lehman, 79 Ill. 173; Fowler v. Deakman, 84 Ill. 130; Barney v. Giles, 120 Ill. 154,. 11 27. E. 206; Micbaelis v. Wolf, 136 Ill. 68, 26 27. E. 384; Arnold v. Bournique, 144 Ill. 132, 33 N. E. 530; Gilmore v. Courtney, 158 Ill. 432, 41 N. E. 1023. The parties have, however, a right to demand' that the umpire shall, with respect to every matter submitted to- his determination, exercise an independent and honest judgment, and that he shall not arbitrarily refuse to accept performance or to give-a certificate. If the work has been in good faith performed, it is-his duty to accept; the fact of performance to be determined by him in the exercise of an independent, honest judgment. But arbitrary refusal to determine the fact, or arbitrary refusal to accept performance, constitutes a fraud in the law, availing to dispense with the necessity of his judgment as a condition precedent to the right of recovery by the contractor.
We come then to the question whether there was evidence hereof such action by the umpire that the question of the right of the plaintiff to recover the unpaid balance upon the contract should have-been submitted to the jury. In the consideration of this question, we must take that view of the testimony which is most favorable to- *709 the contention of the plaintiff in error, resolving all inferences and doubts in its favor. The testimony of the plaintiff below tended to prove the substantial performance of the work contemplated by the contractor, and that, upon a test made, the representative of the umpire had declared his full satisfaction with the work, and that every •condition of the contract had been fulfilled. The only objections which the umpire stated upon the trial he had found to the work prior to the test were that the elevators did not start and stop properly, .and were too noisy. Whether the imperfect starting or stoppage was owing to a defect in the construction, or to ignorant or unskillful operation of them, is not stated. Nor does it appear that such objection existed at and after the test. In regard to the objection of noise, it is to be observed that the original specification provided for a duplicate steam pump, and that the owner required the substitution of an electric pump and motor; that as early as the month of January, 1893, the Crane Elevator Company notified the owner that it had ascertained that the electrical pumping plant was practicable ■only for small powers and for small plants, i. e. that an electric pumping plant for one or two elevators can be constructed with belt connection between the pump and the motor, but with larger plants, to pump against higher pressure, it is necessary to use gearing, which was liable to be noisy; and, if noise be objectionable, they recommended the use of the steam pump, and because, also, it was less expensive to operate, and would occupv less room. No answer being obtained to this communication, the defendant directed the plaintiff to put in the electric pump, which was done. Under these circumstances, if the noise complained of arose from the use of an electric pump, the plaintiff cannot be justU held responsible for the noise, and it would be an arbitrary holding for the umpire to say the plaintiff should abate the noise. These objections do not appear to have been urged after the test made. The architect fails to state any objection of his own to this plant. He contents himself with stating objections made by Mr. Boyce, the owner of the building, and to sending to the plaintiff in error, without comment, the instructions of Mr. Boyce to him, forbidding the acceptance of the work; and this after his representative, by his direction, had appeared at the test which was made, and subjected the plant to the various tests usually applied to determine the sufficiency of the plant, and with which test his representative had declared himself fully content and satisfied. There was a failure to produce the report of this representative, which should have stated specific objections, if any existed, and no such report was ever submitted to the plaintiff. The architect does not seem to have exercised an independent judgment touching the performance of the contract. He appears to have contented himself with forwarding the objections of the owner of the building, without judgment by him of the correctness of those objections. Indeed, he entertained an erroneous idea of his duty. He was not an arbiter between the owner of the building and the plaintiff. He was a judge between the plaintiff and the defendant, and it was his duty to investigate and to decide, with respect to the contract in question, whether its terms had been performed, and, failing in *710 performance, to point out wherein there was failure to perform, or defective performance, that the plaintiff might have opportunity to complete performance according to the terms of the contract. Here the plaintiff' claims to have specifically performed. The plant was ' delivered by the plaintiff to the person in custody and control of the building. The plant was taken possession of by the owner, has been appropriated and enjoyed by him, and has been operated by him in connection with the use of the building; and, although the defendant was merely a contractor with the owner, such a delivery was all the delivery that could have been made to the defendant, who had no right to retain it from the owner, and such delivery, accepted by the owner, absolved the defendant, and is, in effect, a delivery to him. Under such circumstances, there was here a proper question for the jury, whether the refusal of the architect to determine the question submitted to his judgment and to issue his certificate, if there was such refusal, was not arbitrary. He had ho right to content himself with objections raised by the owner without investigation and determination by him of the correctness of those objections. He had no right to remain passive. His duty was that of active judgment, not of passive acquiescence in the objections of the owner. His duty was that of impartial judgment between the parties, which was not fulfilled by an arbitrary refusal to judge, or by inaction, because of the owner’s objections. It should not be permitted that one may prevent the payment of a debt for a plant which had been constructed in substantial accord with the provisions of the contract, if it had so been, and which had passed into the possession of the owner of the building, and been operated by him, because of an arbitrary refusal of the architect to adjudge performance, or to declare wherein performance was defective. In what has been said, we disclaim any expression of opinion upon the weight of the evidence, or of the conclusion to which the testimony should lead. We have sought only' to state to what conclusion the jury might arrive upon the testimony produced, upon a consideration of it most favorable to the plaintiff in error. Viewed in that light, the plaintiff was entitled to the opinion of the jury upon the question involved, and it was error to withdraw the consideration of the question, if the issues were so framed as to permit its presentation.
The declaration embraces a special count upon the contract, alleging performance and the acceptance of the plant by the architect. It also embraces the common counts. The question arises whether it was permissible, under the common counts, to prove that there was either waiver of the condition precedent, or a refusal by the architect to proceed to judgment, or to impeach his determination or refusal to accept for fraud, collusion, or such gross mistake as would necessarily imply bad faith. It is undoubtedly the rule that the plaintiff must declare specially, the contract continuing executory, but when it has been executed, and payment only remains, the plaintiff may, at his election, declare specially or upon the common counts; and so, also, when the work contracted to be done was not performed within the stipulated time or in the stipulated manner, and yet was beneficial to the defendant, and has been accepted and enjoyed by *711 him, the plaintiff cannot recover upon the contract, because he has departed from it, but may recover upon the common counts. Dermott v. Jones, 2 Wall. 1; Taylor v. Renn, 79 Ill. 186. In Catholic Bishop of Chicago v. Bauer, 62 Ill. 188, it was ruled that when full performance had been waived or been prevented, and the work to be performed had been accepted, recovery may be had for the contract price of the service performed, under indebitatus assumpsit. So, also, O’Brien v. Sexton, 140 Ill. 517, 30 27. E. 461. In Fowler v. Deakman, 84 Ill. 130, the architect certified td the correctness of certain items, disallowing others, and by reason of claims for damages by the owners for delays, imperfect work, and loss of rent, declined to adjust the differences. This was held to absolve the contractor from further effort to procure the certificate; that, under a special count charging bad faith and collusion, the fact of the refusal of the architect could not be proven, because there was no allegation of bad faith or of collusion, but that such evidence could be received under the common counts; the court observing:
“It has always been held in our practice that when a party has fully performed his part of a written contract, and nothing remains to be done but for the other party to pay the money due under the contract, a recovery may be had under the common counts.”
We think the question ruled by the decision in that case. If there it was permissible to prove under the common counts that the contractor was absolved from performance of the condition precedent of his contract, it must be equally allowable to prove any fact which would establish such absolution, whether it arises from waiver, acceptance, appropriation and user, or from the wrongful action of the architect. In Hennessy v. Metzger, 152 Ill. 505, 38 27. E. 1058, the declaration would seem to have embraced only the common counts, and the question whether the architect acted fraudulently and arbitrarily was deemed a question proper to be submitted under the issue, although the question of pleading would not seem to have been especially considered. The ruling in Railroad Co. v. March, supra, is not opposed. There a general demurrer was interposed to the whole, and to each count, of the declaration, which embraced a special count upon the contract and a count of indebitatus assumpsit. The special count disclosing the condition precedent of the contract failed to set out any certification by the engineer with respect to performance of the contract. The demurrer was overruled, and a trial was had, which resulted in a verdict and a judgment for the plaintiff. The supreme court reversed the judgment because of the defective special count. There is no suggestion that a recovery could not have been had under the general indebitatus count, if performance of the contract, and a valid excuse for not obtaining the engineer’s certificate, had been shown. It is also to be observed that in the state of Illinois the common-law rule that a general verdict and judgment upon special counts must be reversed if one of the counts be bad, has been changed by Rev. St. Ill. c. 110, § 58, which provides that:
“Whenever an entire verdict shall he given on several counts the same shall not he set aside or reversed on the ground of any defective count, if one or more of the counts in the declaration he sufficient to sustain the verdict.” Bond *712 v. Dustin, 112 U. S. 604-609, 5 Sup. Ct. 296; Santa Anna v. Frank, 113 U. S. 339, 5 Sup. Ct. 536.
If, therefore, the March Case had arisen in the state of Illinois, a different ruling would doubtless have been made. We hold, therefore, that the evidence was receivable under the common counts of the declaration.
It is further to be observed that this contract did not require any certificate from the architect. It was sufficient that the plant should run to his satisfaction, and that it be accepted by him. The special plea alleges such acceptance. Mr. Clark was the representative of the architect in the construction of this building. In the conduct of his business, Mr. 'Cobb called in the assistance of others competent to act for him. Mr. Clark was his representative and assistant in the construction of this building. He was sent by Mr. Cobb to be present at this test. It does not appear that he was an expert with respect to elevators, but Mr. Cobb declares that he himself was not. The evidence of the plaintiff tended to show that the elevators fulfilled all the tests applied or proper to be applied, and that Mr. Clark declared his full satisfaction with the work. In the absence of evidence showing that Mr. 'Clark made a written report of his inspection, and because of the nonproduction of such report, and the failure to call Mr. Clark as a witness, we think the plaintiff was entitled to have the case submitted to the jury upon the question whether Mr. Cobb did not in fact, through his representative, accept the work. It is true, he declares, when called for the defense, that he did not authorize Mr. Clark to accept it for him; but he fails to state with what authority Mr. 'Clark was clothed, or for what purpose he represented Mr. Cobb at the test. It is also true that the defendant was entitled to the personal judgment of Mr. Cobb upon this work, but it was a question for the jury whether that right was not waived by the defendant, who, being present, made no objection to the delegation of authority by Mr. Cobb to Mr. Clark, or to the latter’s assumption of authority and judgment. We are therefore of opinion that the question should have been submitted to the jury for its determination, under the special plea, whether, notwithstanding his denial, there was not in fact an actual acceptance of this work by Mr. Oobb, or by one authorized by him to act in the premises. The judgment is reversed and the cause remanded, with directions to the court below to award a new trial.