# MERCANTILE TRUST COMPANY *v.* HENSEY.

---

BUILDING CONTRACTS; ARCHITECT'S CERTIFICATE; MEASURE OF DAMAGES; PRINCIPAL AND SURETY; COVENANTS; CONDITIONS.

1. The certificate of an architect, ·in the absence of express language in a building contract so providing, is not final and conclusive to the extent of precluding the owner from showing that the materials are inferior, or the work poorly done, or other violations of the contract. (Following *Fontano* v. *Robbins,* 22 App. D. C. 253.)

2. Where a contractor fails to perform work in accordance with the plans and specifications of a building contract, the measure of damages in a suit on his bond is the difference between what the work is worth when complete, and what it would have been worth had it been performed as required by the contract. And neither the contractor nor his

surety can escape liability by getting possession of a mortgage on the property and selling the property at foreclosure sale.

3. Where a contractor agrees to complete certain work by a given day, or pay a certain sum as liquidated damages, and the surety on his bond agrees to protect the obligee from all loss arising from the nonfulfilment of the covenants of the contractor, and there is delay in completing the work, the surety as well as the principal is bound to pay the amount fixed as liquidated damages without any proof of actual loss.

4. A demurrer to a plea in bar to a declaration on a bond given to secure the performance of a building contract is properly sustained, where such plea is founded on the failure of the obligee to perform certain agreements of the contract, and it appears that such agreements are merely covenants, and not conditions.

5. Where, in a declaration in an action against the surety on a bond, one count alleges that the bond was made by the defendant alone, while a second count alleges that it was made by the defendant and another, and there is no proof in support of the first count, and a general verdict is found, a motion in arrest of judgment on the ground of the inconsistency of the two counts is properly overruled. (Following *Chandler & T. Co.* v. *Norwood,* 14 App. D. C. 357.)

6. Where two or more counts are combined in one declaration, a separate verdict upon each count may be directed by the court, if the circumstances require or justify it; but, unless the jury are so directed, it is not ground for arresting the judgment that the jury has rendered one entire verdict upon the declaration as a whole. (Following *Hartman* v. *Ruby,* 16 App. D. C. 45, 60.)

No. 1629. Submitted February 21, 1906. Decided March 7, 1906.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia in an action on a bond given to secure the performance of a contract.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

One William S. Jones, a builder, on January 24, 1900, entered into a contract with appellee, Hensey, to complete twenty-one partially constructed houses for the stated consideration of $89,250. To insure the performance of the contract, Jones gave to Hensey a bond in the penal sum of $50,000, with appel-

lant, the Mercantile Trust Company, as surety. It further appears that five of these houses were owned by the Tulloch estate, and that Hensey was bound to complete them. He gave to Samuel W. Tulloch a bond to insure the completion of these houses. This appellant was also the surety on that bond.

On July 23, 1901, Hensey sued the Mercantile Trust Company to recover $50,000, the amount of the $50,000 bond. The declaration contained one count, alleging that by its certain written obligation, duly sealed, the defendant acknowledged that it was bound unto the plaintiff in the sum of $50,000, no part of which had been paid. To this declaration a plea of *non est factum* was filed. Thereupon a second count was added, which recited the bond as that of William S. Jones, principal, and the Mercantile Trust Company, surety, with other necessary averments. To this count defendant pleaded performance, set-offs, payment, and discharge, and the failure of plaintiff to perform his part of the contract. A demurrer was filed and sustained to the pleas alleging plaintiff's failure to perform; issue was joined on the pleas of payment and discharge; replication *non assumpsit* was filed to the pleas of set-offs and issue joined, and replication to the plea of performance, denying the same and assigning breach, upon which issue was joined. Later, leave being granted, a rejoinder was filed to plaintiff's replication assigning breach, and to this rejoinder plaintiff demurred and his demurrer was sustained. Trial being had upon the issues of performance, set-offs, and payment and discharge, the case went to the jury, which found a verdict for plaintiff in the sum of $8,468, for which amount judgment was given May 19, 1905, after a motion to arrest the judgment on the verdict had been denied. From that judgment this appeal was taken.

*Mr. John Ridout* and *Mr. Hayden Johnson* for the appellant.

*Mr. A. A. Birney* and *Mr. H. F. Woodard* for the appellee.

Mr. Justice DUELL delivered the opinion of the court:

The appellant assigns as reversible error the following:

"1. In sustaining the demurrer to the defendant's further rejoinder.

"2. In admitting evidence tending to prove that the buildings were not completed in accordance with the plans and specifications.

"3. In admitting the testimony of the witness Hough that the work had not been done in accordance with the plans and specifications and the cost of remedying the alleged defects.

"4. In admitting the testimony of the plaintiff that the work and material used in the houses was in many respects, in his estimation, below the requirements of the plans and specifications.

"5. In granting the plaintiff's second prayer, which reads as follows:

" 'If the jury find from the evidence that the buildings in question were not constructed in accordance with the contract, plans, and specifications therefor, then they are instructed that the plaintiff is entitled to recover such damages as he may have proved resulted therefrom; and the measure of his recovery on this ground is the difference between what the houses were worth when completed and what they would have been worth had they been completed as required by the contract.'

"6. In refusing to grant defendant's first prayer which reads as follows:

" 'The jury is instructed that, upon all the evidence in this action, the plaintiff is not entitled to recover any damages against the defendant by reason of any structural defects claimed to exist in the erection of the houses referred to in this action; and in respect of this claim their verdict should be for the defendant.'

"7. In refusing to grant the defendant's second prayer, which reads as follows:

" 'The jury are instructed that the certificate of William J. Palmer accepting the houses made the subject of this litigation is conclusive of their completion according to the terms of the contract, and they are therefore not to consider any structural

defects claimed to exist therein; and in this respect their verdict should be in favor of defendant.'

"8. In refusing to grant defendant's twelfth prayer, which reads as follows:

" 'The jury are instructed that, in considering the question of structural defects, they are not at liberty to consider anything but omissions, if any they find, and are not entitled to consider substitutions of materials or modifications of construction made with the approval of the architect under his interpretation of the plans and specifications.'

"9. In admitting evidence tending to prove delay in completing the houses referred to in the Jones contract.

"10. In granting the plaintiff's first prayer, which reads as follows:

" 'If the jury find from the evidence that the houses in question in this cause were not completed until after August 24, 1900, then they are instructed that for every day after such time that the work remained unfinished the plaintiff is entitled to recover $50; and they should so find.'

"11. In refusing to grant defendant's third prayer, which reads as follows:

" 'The jury are instructed, upon all the evidence in this action, that the plaintiff is not entitled to recover against the defendant for any damages claimed to have been incurred by reason of delay in construction of the houses referred to in this suit; and in respect of this claim the verdict should be in favor of the defendant.'

"12. In admitting evidence tending to prove that the difference in value of the said houses by reason of defective construction was from $2,000 to $3,000 per house.

"13. In refusing to grant defendant's eleventh prayer, which reads as follows:

" 'The jury are instructed that there is no evidence in this case legally sufficient to justify them, in any event, in finding a verdict in favor of the plaintiff, on account of alleged structural defects, for more than nominal damages.'

"14. In sustaining the demurrer to the additional pleas num-

bered 3 and 4, which alleges plaintiff's failure to perform his part of the contract.

"15. In overruling defendant's motion in arrest of judgment."

Appellant's contentions on which he relies embody the assignments of error grouped together. These will be considered in the order in which they are set forth.

1. That, as there was no evidence of fraud or bad faith on the part of the architect, his certificate of completion, given as provided by the building agreement, is final and conclusive. There can be no question but that it is competent for the parties to a contract to agree that the certificate of an architect or other person shall be final and conclusive, and that, in the absence of fraud or bad faith, which latter may arise and be shown in various ways, his certificate is final and conclusive. *Crane Elevator Co.* v. *Clark,* 26 C. C. A. 100, 53 U. S. App. 257, 80 Fed. 705; *Sweeney* v. *United States,* 109 U. S. 618, 27 L. ed. 1053, 3 Sup. Ct. Rep. 344; *Chicago, S. F. & C. R. Co.* v. *Price,* 138 U. S. 188, 34 L. ed. 917, 11 Sup. Ct. Rep. 290.

It is equally true, however, that such an agreement should be set out in clear and express language, and cannot be implied. *Central Trust Co.* v. *Louisville, St. L. & T. R. Co.* 70 Fed. 282, and cases there reviewed. The reasons for this are obvious. Where differences arise between parties, it is their right to settle such differences between themselves, or to appeal to the courts; and these rights should not be taken from them and lodged in a third party without an express agreement. The law applicable to the general subject is well settled, and the only difficulty lies in applying the law to the facts. It becomes necessary in every case to examine the agreement. The provisions of the contract in the case at bar require that the houses shall be completed "agreeably to the drawings and specifications made by Melville D. Hensey, architect, and which plans and specifications are signed by the said parties hereto, and hereunto annexed, within the time aforesaid, in a good, workmanlike, and substantial manner, to the satisfaction, and under the direction, of Bates Warren, or the architect placed in charge by him, to be testified by

writing or certificate under the hand of Bates Warren, or the architect placed in charge by him; and also shall and will find and provide such good, proper, and sufficient material, of all kind whatsoever, as shall be proper and sufficient." And there is a further agreement that "the specifications and drawings are intended to co-operate, so that any work exhibited in the drawings and not mentioned in the specifications, or *vice versa,* is to be executed the same as if it were mentioned in the specifications and set forth in the drawings, to the true meaning and intention of the said drawings and specifications, without any extra charge whatever." Payments as the work progressed were agreed to be made, provided that "a certificate shall be obtained from and signed by the architect in charge, that the contractor is entitled to payment; said certificate, however, in no way lessening the total and final responsibility of the contractor. Neither shall it exempt the contractor from liability to replace work, if it be afterwards discovered to have been done ill, or not according to the drawings and specifications, either in execution or materials; and, further, that the party of the second part shall furnish, if required, satisfactory evidence that no lien does or can exist upon the work." The specifications, made a part of the contract, provide, among other things, "for material to be furnished and labor to be performed in the erection and completion of twenty-one (21) residences * * * for Mr. Melville D. Hensey, to be built according to the plans and elevations, and detail drawings, and these specifications, prepared by M. D. Hensey, architect, but under the supervision of an architect to be appointed by Bates Warren, said architect appointed to take entire charge."

In the general conditions these recitals appear: "The contractor will provide all the materials, new and of the best quality, and will execute and complete all the work as set forth in the specifications and drawings in the best and most workmanlike manner. * * * In all cases of doubt as to the meaning of the drawings reference is to be made to the architect in charge, whose decision will be final. The drawings and specifications are intended to co-operate, and anything shown upon one or

stated in the other is to be done and performed as if set forth in both."

Bates Warren, named in the contract, on April 19, 1901, appointed one Palmer, an architect, to take entire charge. He accepted the appointment and on July 29, 1901, he gave Mr. Warren the following certificate:

July 29, 1901.

Bates Warren, Esq.,
    Washington, D. C.
Dear Sir:—

It gives me pleasure to report to you the completion of the twenty-one Kellogg houses, located on Vernon, California, Kalorama, and Belmont avenues, by the Mercantile Trust Company, of Pittsburg. The work has been done according to my interpretation of the plans and specifications, and where deviations have been made from the plans and specifications, it has been where the same has been inconsistent and ambiguous; and in all cases of inconsistency and ambiguity the work has been done according to the interpretation most beneficial to the houses.

Yours very truly,
.W. J. Palmer

It appears by the record that Palmer was called as a witness for plaintiff and on cross-examination testified, in substance, that "a large part of the work upon the houses in question was completed when he commenced his supervision; that he did not regard it as his duty to change conditions there excepting where the brickwork had been destroyed by vandalism, and tore nothing down unless it was in danger of falling down. Had nothing to do with the work which was already done, and was only to supervise the completion of the work. The witness testified further that on June 17, 1901, he wrote to Mr. S. W. Tulloch a letter which was produced in evidence, which letter reviewed a large number of alleged defects in the work on the houses, recognized some as existing and stated they would be remedied, and declared that other objections were not well taken, and con-

tained a further statement as follows: 'You will appreciate, I have no doubt, the difficulty of my position; having but recently been appointed (April 19, 1901) as architect in charge, my position really becomes rather referential than administrative and supervisory,' and said witness explained that by the said statement he thought he meant that most of the work had been done, and it was difficult for him to rectify work that was already done badly."

After an examination of so much of the contract and specifications as are set out in the record, we are forced to the conclusion that its terms are not sufficiently clear and express to warrant us in holding that the architect's letter, reporting the completion of the houses, must be taken as final and conclusive and sufficient to preclude the appellee from giving testimony showing that the contract had not been complied with. True, the contract says that the work is to be done "to the satisfaction and under the direction of Bates Warren, or the architect placed in charge by him." It does not say that his decision that the work has been done to his satisfaction is to be final and conclusive. Nowhere do we find any stipulation that the architect's decision on any point is to be final, save "as to the meaning of the drawings." Further, when payments were called for they were only to be made upon the certificate of the architect, but such certificate was in no way to lessen the final responsibility of the contractor, and obliged him to remedy defects either in execution of the work or in materials. This, we think, tends to show that it was not the intention of the parties, especially Hensey's, to make the architect's certificate final and conclusive. We do not think that under the authorities fraud or bad faith on the part of Palmer must be shown in order to go behind his letter reporting the completion of the houses. Even his letter says that deviations from the plans and specifications have been made; and he adds that where that has occurred the work has been done to the advantage of the houses. Called as a witness, as we have shown, on cross-examination, he testified that in a letter to S. W. Tulloch he had written that his position had been referential rather than administrative and supervisory. The facts, as we

view them, bring the case within the line of authorities, holding that the certificate of an architect, in the absence of express language, is not final and conclusive to the extent of precluding the owner from showing that the materials were inferior or the work poorly done, or from showing other violations of the contract. *Glacius* v. *Black,* 50 N. Y. 145, 10 Am. Rep. 449; *Fontano* v. *Robbins,* 22 App. D. C. 253, and cases there cited. We think the facts of this case do not bring it within appellant's contention that the architect's certificate of completion is final, and, therefore, all the errors assigned relating to the subject are not well founded, and no error was committed by the trial court in his rulings on this question.

2. It is next urged that, even if the houses were not completed in the manner required, there is no proof in the case that damages were sustained by appellee by reason thereof. To sustain this proposition, it is argued that, as the houses were sold under foreclosure immediately after completion, appellee, besides showing diminished value owing to the way houses were constructed, should have proved that he thereby sustained some tangible loss. We think the court was right in stating the measure of damages in the case to be "the difference between what the houses were worth when completed, and what they would have been worth had they been completed as required by the contract." The question was left to the jury to determine whether the houses were constructed in accordance with the contract plans and specifications. There was evidence on the subject sufficient to make the question one for the jury. If the appellant sold the houses immediately after their completion, as the record shows, the appellee thereby was given no opportunity to rent or sell the houses, or otherwise utilize them. It would be a harsh rule, and one, so far as we know, never applied, that a contractor can improperly erect a building by departing from the contract plans, possess himself of a mortgage or trust notes on the property, sell the building at auction, bid it in, and thereby be in a position to say to the owner: Yes, I failed to comply with the terms of the contract so that the building when completed was not worth as much as it would have been had I proper-

ly carried out the contract; but, though you were damaged, you cannot recover anything, for I have foreclosed a lien upon it, and your title is extinguished. No one can profit in this way by his own wrong. The proposition is untenable, and the cases cited by appellant do not support it.

3. Appellant further contends that the surety assumed no liability for damages for delay, but that, should it be held otherwise, he is not bound by any stipulation as to liquidated damages; and, there being no proof of any actual damages, no liability is imposed upon him. With his assertion that a surety's liability cannot be extended by implication we agree. The appellant's liability for damages owing to a delay in completing the work, and that such damages are liquidated damages, must be found, if at all, in his written obligation, taken in connection with the contract. The obligation of the appellant, under his bond, to respond for the delay in completing the houses, is claimed to be found in the following clause of the bond: "That, if the said principal shall duly and faithfully perform and fulfil *all and every the conditions of said contract,* above recited, on his part to be kept and performed, and shall keep harmless and protect the said obligee from and against all loss by reason of the *nonfulfilment* by the said principal of *the covenants contained in said contract,* to be performed by him as aforesaid, and also against actual loss by reason of any and all claims, defects, errors, objections, liens, and encumbrances, arising from the nonfulfilment by the said principal of the said covenants, then this obligation to be void; otherwise to be and remain in full force and effect." In short, the appellant agrees to protect the appellee from all loss arising from the nonfulfilment by its principal of the covenants in the contract contained. Turning to the contract, we find that it provides that, "should the contractor fail to finish the work at, or before, the time agreed upon, he shall pay to the party of the first part the sum of $50 for each and every day thereafter the said work shall remain unfinished as and for liquidated damages," etc. If the principal be holden to make the payment for delay, and the damages are liquidated, we see no reason why the surety is not also liable. It is bound

to do all that its principal was holden to do.   That the principal was bound to pay the amount fixed as liquidated damages without any proof of actual loss is settled by the decision in the case of *Sun Printing & Pub. Asso.* v. *Moore,* 183 U. S. 642, 46 L. ed. 366, 22 Sup. Ct. Rep. 240.

4. It is also contended that the performance of the agreements of the appellee were conditions precedent to that liability of the appellant, and that the appellee failed to perform in two respects.    The bond is issued upon the express condition "that all the covenants and agreements contained in said contract made by the said obligee and on his part to be kept and performed, for the protection of the obligee, and the said security shall be strictly kept and performed by the said obligee."   It is insisted that the failure of the appellee to furnish 82 mantels and to pay the whole contract price were conditions, and not covenants. The clause of the contract relative to the mantels is that they were to be furnished to the party of the second part (Jones) by the party of the first part (Hensey) free of charges.   The mantels were not furnished.   Appellant pleaded *in bar* the failure of appellee to furnish them.   Demurrer was filed to this plea and sustained.   At the trial the value of the mantels was proved to be $1,325, and the jury, at appellant's request, was instructed to deduct such sum from any sum found by them to be due in respect of damages, if any such they found, for delay in, or defects in, the construction of the houses.   We can find nothing in the contract to warrant a conclusion that the agreement to furnish the mantels was a condition.   It was a mere covenant, and appellant received the amount claimed as the value of the mantels.   We think the court below properly sustained the demurrer to the plea *in bar*.   Appellant also pleaded *in bar* appellee's failure to pay the total sum agreed by him to be paid for completing the houses.   Appellee demurred to this plea, and it was sustained.   There was no error in this, for the agreement to pay was also a covenant, and not a condition.   The amount due was $8,630, and, at the request of appellant's counsel, the court instructed the jury to credit that amount upon any damages, if any such they found, for delay or defects in the construction of

the houses.   It may be here said that other set-offs were allowed appellant, in the light of which the amount of the damages found for appellee may seem somewhat large.   The case, however, was properly left to the jury, and there is no authority vested in us to disturb their verdict even though that question of the verdict being excessive was before us.

One other question remains for consideration.   It is that the motion in arrest of judgment should have been granted because there were two inconsistent counts and no evidence was offered in support of the first count.   We have heretofore stated the nature of the counts, and it is unnecessary to set them out.   The questions raised by the motion have been settled by this court,—the first in *Chandler & T. Co.* v. *Norwood,* 14 App. D. C. 357–366, the second by *Hartman* v. *Ruby,* 16 App. D. C. 45, 60.   In the latter case we said:   "There is neither law nor practice in this District which requires that when two or more counts are combined in one declaration the verdict of the jury must be separate upon each count.   A separate verdict upon each count may be directed by the court in such cases, if the circumstances require or justify it; but, unless the jury are so directed, it is not ground for arresting the judgment that the jury has conformed to the uniform practice, and has rendered one entire verdict upon the declaration as a whole."

We think no reversible error has been shown, and, therefore, the judgment appealed from shall be affirmed, with costs.   And it is so ordered.                                    *Affirmed.*

A writ of error to the Supreme Court of the United States. was allowed March 15, 1906.