NORTH AMERICAN RY. CONST. CO. v. R. E. McMATH SURVEYING CO.

(Circuit Court of Appeals, Seventh Circuit. May 6, 1902.)

No. 824.

1. CONTRACT FOR RAILROAD CONSTRUCTION—ACTION TO RECOVER FOR EXTRA WORK—EFFECT OF PROVISION MAKING ENGINEER ARBITER.

In an action to recover for extra work done in the construction of a railroad under a contract which made the engineer arbiter of all differences between the parties, and his decision conclusive upon every question relative to the execution of the contract and the price to be

---

¶ 1. See Contracts, vol. 11, Cent. Dig. §§ 1300, 1310, 1315.

paid for such work as that sued for, an allowance by him for such work is essential to recovery, unless the proof shows that, in disapproving the claim or withholding allowance of it, he acted through fraud, collusion,. or such gross mistake as to imply bad faith, or failed to exercise an honest judgment; and a charge which fails to instruct the jury as to the effect of such provision of the contract is erroneous.

**3 SAME—EVIDENCE OF VALUE OF WORK.**

In an action to recover under a contract for constructing a railroad grade, for work not specified therein, consisting in part of extra grading alleged to have been required by the engineer, evidence of the cost of such work to the plaintiff, but which does not show the amount of such grading or its value measured by the terms of the contract, is not admissible as primary evidence to establish the measure of liability under the contract, which fixed prices for such work.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The R. E. McMath Surveying Company, defendant in error and plaintiff below (for brevity hereinafter called the McMath Company, or the plaintiff), recovered judgment against the North American Railway Construction Company, a corporation, plaintiff in error and defendant below (for brevity hereinafter called the North American Company, or the defendant), upon a declaration in assumpsit for an alleged balance due for work performed under a railway grading contract, wherein the McMath Company is designated as party of the first part, or "contractor," and the North American Company as party of the second part, or "company." The claim in controversy is for alleged extra grading and moving track material from the right of way, for which no estimate or certificate as extra work was given to the contractor by the engineer of the North American Company; and in reference thereto, beside the provision that all work must be performed "to the satisfaction and acceptance of" such engineer, the contract fixed the compensation "for all grading and ditching, either on private right of way or public highways," at 17½ cents per cubic yard, and "for all clearing and grubbing the whole length of the right of way" $200 (which was certified and paid); and the contract further specified: "The alignment and adjustment of the grades of road may be changed whenever the engineer may consider it necessary or expedient, it being understood that no claim will be made or allowed for damages or increase of prices in consequence of such change." "Measurements of quantities of excavation will in all cases be made from the cuts or pits from which it is taken, except when the surface of the pits are too irregular for making correct measurements in that way. In such cases the quantities may be measured in the embankment, the engineer making a fair allowance for shrinkage and compression, which allowance shall in no case exceed ten per cent." And that payments for the work shall be made by the second party upon the certificates of its engineer "that the work contemplated to be done under the contract has been fully completed." The contract also expressly provides as follows: "That said work shall in all particulars be made to conform to the profile specifications. and directions of the engineer in charge of the work, by whose measurements and calculations the quantities and amounts of the several kinds of work performed under this contract shall be determined, and who. shall have full power to reject and condemn all work which in his opinion does not conform to the spirit of this agreement, and shall decide every question which may or can arise between the parties relative to the execution thereof, and his decision shall be conclusive and binding upon both parties hereto." And in a subsequent clause as follows: "For the purpose of avoiding all cause of difference or dispute between the parties to this contract relative to its true intent and meaning, and for the purpose of adjusting in an amicable manner any difference that may or can arise relative thereto, it is mutually understood and agreed as follows, to wit: First. The party of the second part hereby agrees to procure and furnish the right of way, said party of the second part reserving the right at any time to change the location of the line and the establishment of the grades previous to any grad-

ing being done; and it is hereby mutually agreed that no extra charge will be claimed or allowed on account of such changes in the line of grades, the prices herein mentioned being considered as full compensation for the various kinds of work agreed to be performed. Second. Whenever work is required to be done which is not now contemplated or covered by the prices herein mentioned, the engineer shall fix such prices for the work as he shall consider just and equitable, and said parties shall abide by such prices providing the party of the first part enter upon and commence such work with the full knowledge of the prices so fixed by the engineer. But, if the party of the first part decline executing the work at the prices fixed by the engineer, then the party of the second part may enter into contract with any other person or persons for its execution, the same as if this contract had never existed. And if extra work or work not provided for in this contract is performed by the contractor without protest or notice in writing to the engineer, before such prices shall have been fixed for such work, then the engineer shall estimate the same at such prices as he shall deem just and reasonable, and his decision shall be final, and the contractor shall accept of such prices in full satisfaction of his demands against the party of the second part for said extra work. But nothing shall be deemed extra work that can be measured and estimated under the terms of this contract."

Payments were made for all work certified by the engineer, and the declaration contains the common counts, and a special count, which thus states the claim in question: "And the plaintiff avers that, after the performance of all parts by it to be performed in and about the completion of the work as provided in the agreement aforesaid, the said engineer in charge of said work, to wit, Charles Powers, instead of giving the plaintiff a certificate or estimate of all the work done by the plaintiff in the performance of said agreement, and under the orders and direction of said defendant, by and through its said officers, the said engineer did refuse to give a full and complete and final estimate of all the work done, and that the said engineer gave only a partial estimate, to wit: For clearing and grubbing according to the prices mentioned in the agreement, $200; grading from station 20–201, $3,052.49; cast-iron pipe hauled and laid, $326.47; and did refuse upon completion of said work, as aforesaid, to give any further or other estimate of work done, although the same had been done under his order and direction and to his satisfaction; and that there had been done other work under said agreement above mentioned, and also other work done by the said plaintiff under the order and direction of said defendant, which the said engineer neglected or refused to give any other or further estimate therein, as provided by said agreement he should do. And the plaintiff further avers that by and through its duly authorized officers, agents, and attorneys it has endeavored, during the last four months, to meet said engineer, and go over the several items claimed by the plaintiff to have been done, and to get his decision and estimate therefor; that the plaintiff furnished the defendant at its office in Chicago, and also its attorney representing it, a complete itemized statement of all the work done, and requested its engineer to go over the same, but that said engineer and said defendant company neglected, and still refuses and did refuse, at the time of the commencement of this suit, to cause said engineer to go over the items of work, labor, material, and extras furnished, as above set forth, by the said plaintiff to the said defendant, and the plaintiff is unable to get any settlement, or any decision from said defendant or from said engineer, upon any of the items claimed by the said plaintiff. This plaintiff further avers that the said agreement in writing has been violated and broken by the said defendant in many particulars, to wit, that the said defendant did not furnish to this plaintiff the right of way so as to permit it to carry on the work uninterruptedly, as provided by said agreement; that it has neglected from time to time to furnish this plaintiff with estimates of work done, and to consider or make any allowance for the extra work ordered by the said defendant through its duly authorized officers, agents, and which extra work, materials, and labor was furnished by this plaintiff in accordance with the said order and request."

The only testimony offered on the part of the plaintiff to show the performance and value of extra work is that of William Clancy, its superintendent, who states instances of disagreement with the engineer during the progress of the work, change of grade after work had been performed, and interferences whereby much extra work and expense was required of the contractor. He says: "I kept a memorandum of that extra work. I kept track of it by keeping a force report of the teams and men that worked on it each day; the amount of time expended in moving the material and doing the extra work that Mr. Powers [the engineer] was making me do;" and that "Powers did not fix a price for that or for any of the extras; not a word was said about it." Under various objections on behalf of defendant to the competency and sufficiency of the proof, the witness gave an itemized statement of date, place, and time of teams and men employed on the work designated by him as "extra," and the expense incurred by the plaintiff therefor, with "no profit figured in" but "actually what we paid," and "the fair cash market value." No proof was offered to show the actual amount of work so performed or other measure of its value.

Charles G. Powers was the engineer of the defendant, designated by the contract to estimate and certify the work, and the testimony shows that he acted as such, and made estimates and allowances for work performed which included extra allowances for certain changes in grade or alignment. He testifies, in substance, that he so estimated and allowed all of the plaintiff's work, and to the best of his ability passed upon all items "fairly and conscientiously." No specific claim for the charges in controversy was presented or made to the engineer during the progress of the work, nor presented to or discussed with him at any time on the part of the plaintiff, and no "protest or notice in writing to the engineer" appears in evidence. The witness Clancy recites changes ordered by the engineer which caused extra work,—imputing such changes to mistake or vacillation on the part of the engineer,—and oral complaints and protests for expense so incurred. He says: The engineer "did not furnish us with an estimate at any time of the extra amount of cubic yards we had changed and moved about. Every time he wanted me to do it I demurred, and gave him the same reasons. I told him it was costing the North American Company or some company a good deal of money the way he was carrying on the work." The only testimony indicating effort on behalf of the plaintiff to have the engineer pass upon the claim for extras appears in a general remark of this witness: "I seen Mr. Powers, and asked him for the estimate, and his answers to me was that he was so busy;" and "I suppose three or four different times I asked him for an estimate," but "never got one"; and before bringing suit ineffectual attempts appear to have been made by Mr. Roberts, attorney for the plaintiff, to reach the engineer.

At the close of the testimony the defendant moved for instructions to find in its favor, excepted to the denial of such motion, and further excepted to each of the following instructions given by the court in submitting the case to the jury:

"The court instructs the jury, as matter of law, that the issues of fact that you are to determine in this case are whether the plaintiff is entitled to recover from the defendant the value of certain extra work which is alleged to have been done by the plaintiff for the defendant in the completion of the work under the contract in question.

"You are instructed as matter of law that where the contract does not fix the amount of money to be allowed for any extra work or labor or material furnished by the plaintiff, if you find from the evidence there was such extra work, labor, and material furnished, or the price thereof has not been fixed by any person directed to fix it under the contract, then the plaintiff is entitled to recover from the defendant for such extra work, labor, and material, if you find any were so furnished as aforesaid, the fair, cash, reasonable value of such work, labor, and material, if any, at the time the same were furnished to the defendant, as provided by the terms of the contract in question.

"The court further instructs the jury that if you find from the evidence in this case that the defendant's engineer mentioned in the contract failed

or refused to give estimates or certificates of work or labor done in the manner as specified in the contract, or did refuse to give any final estimates or certificates, then you have the right to consider that that part of the contract is waived by the defendant, as it is made for its benefit, and the plaintiff will not be bound thereby.

"The court instructs the jury as matter of law that if you find from the evidence that the engineer mentioned in the contract here in evidence, by reason of his neglect, his mistakes, or his incompetence, caused the plaintiff to do a large amount of extra work, not specified in the contract or the specifications and profiles made a part thereof, and did refuse to allow the plaintiff anything therefor, then the jury will further consider whether such conduct upon the part of the engineer was in such willful disregard of duty as amounts to a fraud upon the plaintiff; and, if you find from the evidence that said engineer did act willfully and in fraud of the said plaintiff under said contract, then the plaintiff should be allowed to recover for whatever extras you find from the evidence it has furnished, according to the reasonable value thereof, as heretofore instructed, unless the same has already been paid for under the terms of the contract."

Error is assigned (1) for admitting the testimony of the cost of alleged extra work; (2) and (3) for denial of motions to instruct the jury to find for the defendant; (4) for the instructions given to the jury; (5) for overruling defendant's motion in arrest of judgment for alleged insufficiency of the declaration; (6) for entering judgment on the verdict.

Frank B. Draper, for plaintiff in error.
Jesse E. Roberts, for defendant in error.

Before GROSSCUP and BAKER, Circuit Judges, and SEAMAN, District Judge.

SEAMAN, District Judge (after stating the facts as above). On this record it is obvious that the case on the part of the plaintiff was presented below upon the theory of its right to recover for work performed under the contract in suit, when the work was beyond the specifications, or classified as "extra," on proof of such fact and of neglect or refusal on the part of the engineer named in the contract for that purpose to estimate and certify such work for allowance, and this view appears to have been adopted by the trial court in the instructions to the jury. As the court held and further instructed the jury that "from the evidence there can be no recovery except under the contract and the terms" thereof, the judgment rests primarily upon the interpretation so adopted of the contract provisions; and the assignments of error, aside from the first, raise the question: What effect is to be given the contract provisions which make the engineer of the North American Company the umpire between the parties of matters respecting performance of and allowance under the contract? These various provisions are unmistakable in this: that the engineer was so named "for the purpose of avoiding all cause of difference between the parties to this contract relative to its true intent and meaning," and "for the purpose of adjusting in an amicable manner any difference" arising thereunder; that he was to decide every question arising "relative to the execution thereof," and that "his decision shall be conclusive and binding upon both parties"; that he was to fix all prices for work not covered by contract prices, or, when "performed by the contractor without protest or notice in writing to the engineer before such

prices shall have been fixed for such work, then the engineer shall estimate the same at such prices as he shall deem just and reasonable, and his decision shall be final"; and that his estimates and certificates were made conditions precedent to liability on the part of the North American Company for performance or allowance. With an arbiter of disputes so constituted by agreement of the parties and the dispute involved in this suit plainly within such agreement, the general doctrine governing the case is well settled for this jurisdiction, and the citations which are submitted as authority for a different rule are not applicable. In Crane Elevator Co. v. Clark, 53 U. S. App. 263, 26 C. C. A. 100, 80 Fed. 705, this court passed upon the question in reference to a provision in a building contract, made in Illinois, which is mentioned in the opinion as one making the architect "the arbiter of disputes between the parties," and Judge Jenkins, speaking for the court, cites the cases in the supreme court of the United States, and thus summarizes the doctrine thereby established: "That, with respect to the subject-matter submitted to the umpire, his determination is final and conclusive; that it may be impeached only for fraud, collusion, or such gross mistake as would necessarily imply bad faith, or for a failure to exercise an honest judgment." The authorities in Illinois are also cited as in accord with such rule. In the leading case of Railroad Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255, and in Railroad Co. v. Price, 138 U. S. 185, 11 Sup. Ct. 290, 34 L. Ed. 917, the engineer of one of the contracting parties was named umpire as in the present case; and for further exemplification see Mundy v. Railroad Co., 31 U. S. App. 606, 14 C. C. A. 583, 67 Fed. 633, and 11 Rose, Notes U. S. Rep. 1099. The doctrine thus stated excludes recovery for the alleged extra work in suit, in the absence of allowance by the engineer, unless the proof further establishes conduct on the part of the engineer amounting to fraud in disapproving the claim or withholding allowance.

Passing the questions raised as to the sufficiency of either declaration or testimony to support the verdict and judgment, we are of opinion that error is well assigned upon the instructions to the jury, which not only fail to observe the rule thus governing the subject of controversy in either proposition, but are inconsistent with it, both in general theory and in substance. The several instructions to the jury were substantially as follows: (1) That the issue of fact to be determined was whether the plaintiff was entitled to recover the value of alleged extra work performed under the contract; (2) that "when the contract does not fix the amount of money to be allowed for any extra work," if the jury find from the evidence "there was such extra work," "or the price thereof has not been fixed by any person directed to fix it under the contract, then the plaintiff was entitled to recover" therefor "the fair, cash, reasonable value" of such work; (3) that if the jury find from the evidence "that the defendant's engineer, mentioned in the contract, failed or refused to give estimates or certificates of work" performed, or refused a final certificate, they were then authorized "to consider that part of the contract waived by the defendant, as it is made for its benefit, and

the plaintiff will not be bound thereby"; (4) that if the jury find from the evidence that the engineer, "by reason of his neglect, his mistakes, or his incompetency, caused the plaintiff to do a large amount of extra work," and "did refuse to allow the plaintiff anything therefor, then the jury will further consider whether such conduct" was "such willful disregard of duty as amounts to a fraud upon the plaintiff," and, so finding, "the plaintiff should be allowed to recover for whatever extras" were furnished, "according to the reasonable value thereof," if unpaid, "under the terms of the contract." ·

The jury were not instructed in reference to the nature and effect of the contract terms whereby the engineer was made the umpire to determine, primarily at least, the issues of fact, whether the work in suit was extra and what was reasonable compensation in such case; and the instructions which were given neither explain the narrow issue which thus remained open to controversy between the parties, nor define such issue· in conformity with the doctrine applicable thereto. With that doctrine in mind the infirmity of the instructions is manifest without further comment, and the fourth assignment of error must be sustained accordingly.

The fifth assignment is based· upon the defendant's motion in arrest of judgment for insufficiency of the declaration. Upon the authority of Elevator Co. v. Clark, supra, and the Illinois cases cited, it is unnecessary to determine the sufficiency of the allegations in the special count to admit proof tending to absolve the plaintiff from compliance with the condition precedent of the contract, as the proof is there authorized under the common counts; and the common counts of this declaration justify the order overruling the motion in arrest of judgment,· although a different view was adopted by the trial court in the instructions. The errors assigned in various forms for insufficiency of evidence under the contract do not call for decision at this time, as the judgment must be reversed for the erroneous rule adopted, and in the event of a new trial the doctrine to be applied to such case as may be presented is sufficiently indicated in the opinion thereupon. In reference to the first assignment based on the admission of testimony which tends only to show the cost of the work in controversy, and at the utmost that reasonable rates were named for men and teams used therein, no other evidence was offered to show the actual amount of work so performed, or its value, measured by the terms of the contract or otherwise. If admissible for any purpose, it is plain that this testimony was not primary evidence of the measure of liability under the contract, in any view, and the objection accordingly is well founded.

For the reasons stated the judgment is reversed, and the case remanded, with direction to award a new trial.