MEMPHIS TRUST CO. et al. v. BROWN–KETCHUM IRON WORKS.

(Circuit Court of Appeals, Sixth Circuit. January 20, 1909.)

No. 1833.

1. ARBITRATION AND AWARD (§ 16*)—EXECUTORY AGREEMENT—REVOCATION.
    A naked executory agreement, not under a statute or rule of court, to submit disputes to arbitration, is revocable at the will of either party in advance of arbitration and award.

    [Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. §§ 64–66; Dec. Dig. § 16.*]

2. ARBITRATION AND AWARD (§ 9*)—CLAIMS—RIGHT TO SUE—CONDITIONS PRECEDENT.
    When an agreement to arbitrate is collateral to and independent of the other provisions of the contract, such arbitration is not a condition precedent to the right to sue for such provision, in which case the remedy for refusal to arbitrate is by action for breach of that agreement, but if it is stipulated that arbitration shall be a condition precedent to recovery no action can be maintained without actual or tendered compliance therewith.

    [Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. § 30; Dec. Dig. § 9.*]

3. CONTRACTS (§ 284*)—BUILDING CONTRACT—DISPUTES—ARBITRATION.
    Where a building contract provided that the architect should determine finally all matters in dispute, and that final settlement should be had and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

payments made on architects' certificates, such provisions were not merely collateral, but were of the essence of the agreement, and could not be revoked by either party, but actual or tendered compliance was a condition precedent to a recovery thereon.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1308; Dec. Dig. § 284.*]

4. CONTRACTS (§ 284*)—BUILDING CONTRACT—ARBITRATION—EFFECT OF AWARD —CONCLUSIVENESS.

Where a building contract provided that the architect should finally determine all disputes between the parties, an award made by virtue of such provision, in the absence of fraud or such gross mistake as would imply bad faith or failure to exercise honest judgment, is binding on both parties so far as it is confined to disputes actually subsisting and open to arbitration.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1326, 1331; Dec. Dig. § 284.*]

5. CONTRACTS (§ 284*)—BUILDING CONTRACT—ARBITRATION—SUBSTITUTION OF ARBITRATOR.

Where a building contract provided that all disputes should be finally determined by the arbitration of B., and authorized substitution of another in his stead, the substitution of G., on B.'s inability to act, was under the original agreement and was not a new agreement for arbitration.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 284.*]

6. CONTRACTS (§ 285*)—BUILDING CONTRACT—ARBITRATION—DISQUALIFICATION OF ARBITRATOR—INTEREST.

An arbitrator under a building contract was not disqualified because of interest because he was a member of a firm of architects which one of the parties charged with responsibility for delay in approving detailed drawings, there being nothing to indicate that the architects would become liable to the owners in case they were at fault as between them and the contractors.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 285.*]

7. CONTRACTS (§ 322*)—BUILDING CONTRACT—ARBITRATION—QUALIFICATION OF ARBITRATOR—INTEREST—RELATIONSHIP OF PARTIES — KNOWLEDGE — EVIDENCE.

Evidence held to warrant a finding that a contractor had knowledge of the relations of an arbitrator to the owner prior to the arbitrator's selection.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 322.*]

8. CONTRACTS (§ 292*)—BUILDING CONTRACT—ARBITRATION—BAD FAITH.

Failure of an arbitrator to clearly recite in the award the action of one of the parties in its attendance before the arbitrator, and its attempted withdrawal of the submission, and the arbitrator's previous attitude toward the question of responsibility for the contractor's delay, was not sufficient to indicate absence of good faith or an honest exercise of judgment on the arbitrator's part.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 292.*]

9. CONTRACTS (§ 285*) — BUILDING CONTRACT — ARBITRATION — QUESTIONS IN DISPUTE.

A contractor advised the owner of a building in process of construction on August 23, 1905, that owing to a large amount of Sunday and night work put on the job the contractor was unwilling to pay express charges on material. The owner accordingly directed that everything be sent by express on account of its urgent need of the material, with condition that express charges previously paid would later be considered, and, if found that the contractor was not responsible for the delay, credit would be given therefor. Held, that the owner was liable for the dif-

---

ference between express charges and freight on material shipped after the date of such arrangement, and that such claim was not within a provision of the contract for arbitration of disputes, for the reason that it had already been adjusted between the parties.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 285.*]

Appeal from the Circuit Court of the United States for the Western District of Tennessee.

On September 17, 1904, the appellant Memphis Trust Company (whose name was later changed to the Bank of Commerce & Trust Company) entered into a contract, as owner, with the appellee, Brown-Ketchum Iron Works, for the furnishing and installing complete, on or before July 1, 1905, for the sum of $16,900, of certain ornamental ironwork in a bank and office building to be erected in Memphis, Tenn., according to drawings and specifications prepared by D. H. Burnham & Co., architects. The contract provided for payments by the owner on account of the contract price upon written certificates to be issued by the architects from time to time, as the work should progress, to an amount not exceeding 85 per cent. of the value of the materials used and labor performed, as estimated by or for the architects, and that final settlement as to the remainder and for all extras, if any, should be had and payment made 40 days after the completion of the work, free of liens, charges, and claims, upon the architects' certificate thereof in writing. The contract further authorized the architects, whenever in their opinion the work done was defective or deficient, or the contractors failed to complete the work according to the specifications, to reject such defective or deficient work and require the same to be done over, or to deduct from the contract price, by means of rebate certificates to be issued by them, sufficient to compensate the owner for such defect or deficiency. It also permitted alterations in plans, materials, or workmanship desired by the owner during the progress of the work, and in case thereof a just allowance by the architect to the contractors or the owner, according as the changes should increase or decrease the expense, and for the allowance of additional time, when required by such changes, the contractors expressly waiving all claims for allowance for extra work or material unless furnished upon written order signed by the architects. It also contained an express provision that in case of failure to complete the work by the date fixed therefor the actual amount of damage to the owner for each day's delay should be determined by the architects, and be deducted from the balance otherwise due the contractors, or, if in excess of such balance otherwise due, the remainder to be refunded by the contractors. It was also expressly agreed that in all matters of dispute under the contract, including (among other things) the decision as to what should be deducted on account of defective work or what should be deducted or added on account of changes in the drawings and specifications; or the value of extra work, or the amount of additional time to be allowed to the contractor for the completion of the work, "or in any other case or contingency whatsoever in which a dispute should arise in regard to the conditions or proper interpretation" of the agreement, such dispute should be referred to "D. H. Burnham as sole referee or arbitrator, or in case of his inability to act to such other person as may mutually be agreed upon by the parties hereto," and that "his decision shall in all such cases be final and binding upon the said parties."

The building was not finished suitably for any occupancy whatever until September 1, 1905, and the work of the Brown-Ketchum Company was not finally completed until two months or more later. Plaintiff claimed (in addition to the contract price of $16,900) pay for extras furnished amounting to $1,776.60, which included an item of $1,124.54 as the amount of express charges paid on certain material above what the freight would have been; and, after allowing cash payments of $7,000 and sundries amounting to $395.25, claimed on January 11, 1906, a credit balance of $11,281.41.

At this time the trust company was claiming deductions to the amount

of $979.53 on account of payments made for work which it was alleged should have been done by the Brown-Ketchum Company, and was demanding damages on account of the failure of the contractors to complete their work within the specified time. The claim of damages was disputed by the Brown-Ketchum Company, upon the ground that its delay was caused by the delay of the architects in approving necessary detailed drawings, in connection with the existence of a quarantine and a strike affecting appellee's drafting department. The amount of the claimed deductions was likewise in dispute. The express charges referred to had been incurred under an arrangement made August 24, 1905, by which the trust company instructed the Brown-Ketchum Company to ship the remaining items of material by express, the charges (estimated at $150) on material previously shipped by that method to be the subject of future consideration, and to be allowed to the Brown-Ketchum Company in case it should be found upon investigation that that company was not responsible for the delay in the completion of their work. The amount of these earlier express charges was thus still in dispute. At this juncture the Brown-Ketchum Company asked the trust company for a payment of $8,000 on account, and payment was declined until the claim of the trust company for failure to complete the building on time should be adjusted. The parties accordingly decided to arbitrate all matters so in dispute. It being ascertained that Mr. Burnham was about to leave the country and could not act, a written agreement was made on January 20, 1906, reciting the provision in the contract of September 17, 1904, for an arbitration by Mr. Burnham of all matters of difference between the parties, the fact that differences had arisen and Mr. Burnham's inability to act, and substituting Mr. E. R. Graham (who was a member of the firm of D. H. Burnham & Co.) "in place and stead of said D. H. Burnham," and agreeing "to leave to the said E. R. Graham, as sole referee and arbitrator, all matters of difference or controversy between the parties," the arbitration to take place at such time during the month of February, 1906, as Mr. Graham should fix. This agreement expressly provided that submission to such arbitration should be a condition precedent to any suit brought by either party against the other. It also reserved the statutory builder's lien in favor of the Brown-Ketchum Company in case the trust company should fail to abide by the arbitrator's award. Contemporaneously therewith, and upon the strength of said agreement of arbitration, the trust company paid to the Brown-Ketchum Company $7,579.20, which was the precise balance before then unpaid upon the 85 per cent. of the contract price provided to be paid in advance of final adjustment, this payment being referred to in the written agreement substituting Mr. Graham as arbitrator. Mr. Graham fixed February 1st for the arbitration, at his office in Chicago, notifying both parties. On the day before the date fixed for the hearing, the Brown-Ketchum Company sent to the arbitrator a written statement of its claims and of its positions regarding the matters in dispute. On February 1st representatives of both parties appeared before the arbitrator. The trust company's representative was prepared to proceed with the arbitration. The representatives of the Brown-Ketchum Company, under advice of counsel (who accompanied them to the meeting), gave written notice declining to proceed with the arbitration, upon the ground that Mr. Graham and the firm of D. H. Burnham & Co. were "more or less directly interested" in the pending disputes, and that Mr. Graham was thereby disqualified to act as arbitrator, the alleged disqualification being based upon the proposition that the delay of the contractors was due to the fault of the architects in not approving drawings. Another arbitrator having been suggested on behalf of the trust company, and being objected to by the Brown-Ketchum Company as being disqualified for similar reasons, the trust company insisted on proceeding with the arbitration, and the arbitrator announced his intention to so proceed. After hearing the statement of the trust company's representative of its claims upon the merits, the Brown-Ketchum Company's representatives and its counsel withdrew, and the arbitration was proceeded with. The arbitrator made his award under date of February 1, 1906, finding due to the Brown-Ketchum Company (independently of damages for delay) the sum of $1,695.89. In arriving at this sum the arbitrator deducted from the claim of the contractors the entire amount of

the express charges paid on material. As the contractors' claim was $3,702.21, it is apparent that the deductions made in addition to the amount of the express charges were about $100 less than the aggregate of the deductions claimed by the trust company on account of work which it was claimed should have been done by the contractors. The arbitrator found that through the fault of the Brown-Ketchum Company the trust company had sustained actual damages of $3,558.14 (principally on account of lost rentals) by reason of appellee's delay in completing the work on time. By the award the Brown-Ketchum Company was required to pay to the trust company the resulting balance of $1,862.25. The Brown-Ketchum Company repudiated the award, and filed its bill asking that it be set aside, and for a decree for $3,702.21, upon the ground that Graham was disqualified to act by reason of his interest before referred to; that the agreement to arbitrate was an executory undertaking entered into on complainant's part under a mistake of fact, from which it had the right to withdraw, and did withdraw, before the arbitration was entered upon. The bill contains no more direct charge of fraud on the part of the arbitrator than this: "Plaintiff avers that the award was made by an interested party, who was disqualified in law and in morals from serving, and the award is unfair and unjust, and is marked and marred with complete bias and prejudice to plaintiff's detriment," instances of such alleged bias and unfairness being cited. Defendant answered, denying any indebtedness on its part to the complainant, alleging that the latter is indebted to defendant in a large amount on account of damages for breach of the building contract. The cross-bill set up the agreement to arbitrate, the arbitration thereunder, and the award thereon, and prayed that the award be confirmed, or, if held to be invalid, that defendant be given decree not only for the amount of the award, but for an additional sum of $500 on account of damages not covered by the award. The answer to the cross-bill reaffirmed the invalidity of the award, setting up the same objections thereto as contained in the original bill, including appellee's ignorance of Graham's disqualification and the alleged conflict of interest between Burnham & Co. and the Brown-Ketchum Company, and its refusal to proceed upon discovering the disqualification of that firm and Graham's membership therein.

On hearing upon pleadings and proofs, the court below held the award void upon the ground that the agreement to arbitrate was revoked prior to the arbitration, and that Graham was otherwise incompetent to act as arbitrator; and, the defendant having elected to stand upon the award rather than upon a consideration of the merits of the case as presented by the testimony in this suit, decree was entered in complainant's favor for $3,702.21, the amount claimed by it, plus interest thereon.

Before LURTON and SEVERENS, Circuit Judges and KNAPPEN, District Judge.

KNAPPEN, District Judge (after stating the facts as above). It is appellee's contention here that the agreement to submit to arbitration, not having been made by virtue of a statute or rule of court, was revocable by either party at will and without cause, before arbitration actually had thereunder. It is also contended (independently of the foregoing proposition) that Graham, by reason of his interest in the subject-matter and his consequent alleged bias, was disqualified to act as arbitrator, and that this disqualification justified a revocation of the submission.

It is the rule that a naked executory agreement (not under authority of statute or rule of court), made after the arising of a dispute, to submit the same to arbitration, is revocable at will by either party, in advance of the actual carrying out of the agreement by arbitration and award thereon. It is also the rule, even in case of agreement to arbi-

trate made before the arising of the dispute, and in connection with the contract out of which it is anticipated a dispute may arise (as in contracts of insurance), that, when the agreement for arbitration is merely collateral to and independent of the other provisions of the contract, such arbitration is not a condition precedent to the right to sue for a breach of such provision, and that in such cases the remedy for refusal to arbitrate is by action for breach of that agreement (Hamilton v. Home Ins. Co., 137 U. S. 370, 11 Sup. Ct. 133, 34 L. Ed. 708), although even in this class of cases, when in express terms or by necessary implication the parties have stipulated that arbitration as to the amount of the loss shall be a condition precedent to recovery upon the policy, no action can be maintained without actual or tendered compliance with that stipulation (Hamilton v. Liverpool, London & Globe Ins. Co., 136 U. S. 242, 10 Sup. Ct. 945, 34 L. Ed. 419; Am. Bonding Co. v. Gibson County, 127 Fed. 671, 62 C. C. A. 397, and 145 Fed. 871, 76 C. C. A. 155).

It is, however, now too well settled to admit of controversy that provisions in a building contract such as exist here, by which a given architect is expressly clothed with the broad authority to determine finally all matters in dispute under the contract, and by which final settlement is to be had and payments made upon architects' certificates, do not create a mere naked agreement to submit differences to arbitration. Nor are such provisions for arbitration merely collateral to and independent of the other provisions of the contract; but they are, on the other hand, of its very essence, and such agreement is not subject to revocation by either party, but actual or tendered compliance with the terms of the contract is a necessary condition precedent to recovery upon it; and an award made by virtue of such contract provision, in the absence of fraud or of such gross mistake as would imply bad faith or a failure to exercise honest judgment, is binding upon both parties thereto, so far as it is confined to disputes actually subsisting and open to arbitration. The following are illustrative of the long line of authorities which announce and enforce the proposition just stated: Kihlberg v. United States, 97 U. S. 398, 24 L. Ed. 1106; Sweeney v. United States, 109 U. S. 618, 3 Sup. Ct. 344, 27 L. Ed. 1053; Martinsburg & Potomac R. R. Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255; Chicago, S. F. & C. R. R. Co. v. Price, 138 U. S. 185, 192, 11 Sup. Ct. 290, 34 L. Ed. 917; Sheffield, etc., Ry. Co. v. Gordon, 151 U. S. 285, 292, 14 Sup. Ct. 343, 38 L. Ed. 164; United States v. Gleason, 175 U. S. 588, 602, 20 Sup. Ct. 228, 44 L. Ed. 284; Am. Bonding Co. v. Gibson County, 127 Fed. 671, 62 C. C. A. 397; Pauly Jail Building, etc., Co. v. Hemphill County, 62 Fed. 698, 704, 10 C. C. A. 595; Mundy v. Louisville & N. Ry. Co., 67 Fed. 633, 637, 14 C. C. A. 583; Elliott v. Missouri, K. & T. Ry. Co., 74 Fed. 707, 709, 21 C. C. A. 3; Boyce v. United States Fid. & Guar. Co., 111 Fed. 138, 142, 49 C. C. A. 276; No. American Ry. Cons. Co. v. McMath Surveying Co., 116 Fed. 169, 174, 54 C. C. A. 27; C. & M. Ry. Co. v. Newton, 140 Fed. 225, 71 C. C. A. 655; Railroad Co. v. Central Lumber Co., 95 Tenn. 538, 32 S. W. 635; St. Paul & N. P. Ry. Co. v. Bradbury, 42 Minn. 222, 227, 44 N. W. 1.

The rule as to the finality of the arbitrator's decision is thus ex-

pressed by Judge Taft, speaking for this court in Mundy v. Louisville & N. Ry. Co., at page 637 of 67 Fed.; at page 587 of 14 C. C. A.:

"The authorities leave no doubt that construction contracts, in which the contractor stipulates that the engineer or architect of the owner shall finally and conclusively decide, as between him and the owner, what amount of work has been done, and its character, and the amount to be paid therefor under the contract, are legal, and should be enforced. In such cases, after the work has been done, the contractor can recover nothing in excess of the amount found due by the engineer, unless he can make it appear that the engineer's decision was fraudulently made, or was founded on palpable mistake." Citing R. R. Co. v. Price; R. R. Co. v. March; Sweeney v. United States; Kihlberg v. United States; and other cases.

This rule has been again thus stated by Judge Severens, on behalf of this court, in Boyce v. United States Fid. & Guar. Co., at page 142 of 111 Fed., at page 280 of 49 C. C. A.:

"This delegation of authority by the parties to works of construction to pass from time to time as occasion shall arise upon incidents of its execution is not unusual. Generally it has devolved upon the engineer in charge, if there be one; but the same rule applies, whoever may be appointed. And if the appointee, without fraud or manifest mistake, makes a determination upon any of the matters falling within the scope of the authority committed to him, the parties are bound by the decision." Citing Sweeney v. United States, R. R. Co. v. March, and United States v. Gleason.

This rule as to the exclusiveness and finality of the action of the arbitrator named is thus not confined to a determination of the sufficiency and value of labor and materials, or to the question of completeness of performance, but extends to all subjects committed to the judgment of the arbitrator. As said in United States v. Gleason, at page 602 of 175 U. S., at page 234 of 20 Sup. Ct. (44 L. Ed. 284):

"Another rule is that it is competent for parties to a contract, of the nature of the present one, to make it a term of the contract that the decision of an engineer, or other officer, of all or specified matters of dispute that may arise during the execution of the work, shall be final and conclusive, and that, in the absence of fraud or of mistake so gross as to necessarily imply bad faith, such decision will not be subjected to the revisory power of the courts." Citing Martinsburg & Potomac R. R. Co. v. March, and Chicago, S. F., etc., R. R. Co. v. Price.

Nor is the rule referred to confined to contracts for railroad construction. It is applied to all manner of building contracts. Thus, the contract in Boyce v. U. S. Fid. & Guar. Co. related to certain public city works; that in Sheffield, etc., R. R. Co. v. Gordon to the construction of blast furnaces; that in United States v. Gleason to excavation of rock; that in St. Paul & N. P. R. R. Co. v. Bradbury to the construction of shops.

Compliance or offer of compliance with the agreement to arbitrate being a condition precedent to the right to sue upon the contract for payment on account of the work and material furnished, it necessarily follows that the agreement to arbitrate was not revocable at will.

It is, however, contended by appellee that the arbitration was not had under the provisions of the original building contract, but by virtue of a new, collateral, and independent agreement. This contention cannot be sustained. Not only does the testimony of the representatives of both parties distinctly assert that the agreement of Jan-

nary 20, 1906, was not regarded as a separate or new agreement, but as a mere substitution of Mr. Graham for Mr. Burnham, as expressly authorized by the provisions of the original building contract; but the language of the agreement of January 20th is equally affirmative of that proposition.

It is further contended that Graham was disqualified to act as an arbitrator because of the fact that the controversy involved the question whether the delay on account of which damages were asked was the fault of the contractors or of the architects, and that thus the latter were interested in relieving themselves from liability by throwing the responsibility upon the contractors. It is true that the architects were, in their relations toward the contractors, the agents of the owners, and that the fault of the architects was thus the fault of the owners, but this fact does not of itself disqualify the architect from acting as arbitrator. There is nothing in the record to indicate that the architects would become or were regarded as liable to the owners in case the failure to furnish drawings should turn out to be the fault of the architects, as between them and the contractors. But independently of this consideration, it is common practice in construction and engineering contracts (as shown by the foregoing citations) for the parties to stipulate for the final arbitration of all matters in dispute by an engineer or architect in the employ of the owner, and the fact of such relation does not affect the qualification of the arbitrator. Such was the situation in Railroad Co. v. March, Railroad Co. v. Price, Mundy v. Railroad Co., and in C. & M. Ry. Co. v. Newton. As suggested in C. & M. Ry. Co. v. Newton, supra, at page 232 of 140 Fed., at page 662 of 71 C. C. A.:

"They (the contractors) are presumed before bidding or signing the contract to have fully advised themselves of the competency, integrity, and judicial fairness of the selected umpire. Their voluntary acceptance of him as the final arbiter on disputed matters as declared in the contract precludes them from any consideration or sympathy because of the engineer being in the employ of the railroad company."

The proposition that the contractors were ignorant of Graham's relations toward the trust company and toward the subject-matter of the controversy, when they consented to his substitution in the place of Burnham, is not sustained by the proofs. It affirmatively appears that, when the agreement of January 20th was made, the Brown-Ketchum Company knew not only that Graham was a member of the firm of Burnham & Co., but that the disputes to be arbitrated involved the question of the relative responsibility of the contractors and the architects for the delay. When the original building contract was made, the appellee is presumed to have contemplated that disputes were likely to arise which would involve the question of the fault of the architects as excusing the contractors; and, when the agreement of January 20th was made, appellees actually knew that such question existed. Unless, therefore, there is in the action or award of the arbitrator evidence of fraud or of such gross mistake as would imply bad faith or a failure to exercise honest judgment, the award must be sustained so far as it relates to disputes actually open and subject to arbitration.

The record contains no substantial evidence from which an inference of bad faith on the part of the referee can be raised. Neither the failure to correctly recite in the award the action of the Brown-Ketchum Company in its attendance before the arbitrator and its attempted withdrawal of the submission, nor the previous attitude of the referee toward the question of responsibility for the contractors' delay throws any discredit upon the referee's good faith and honest exercise of judgment. Such being the case, the merits of the original controversy are not open here.

It remains to consider whether the award goes beyond a determination of the disputes open to arbitration. The questions of damages for delay, the amount of deductions to which the trust company was entitled, and the amount of the express charges paid by the Brown-Ketchum Company prior to August 24, 1905, were all open and in dispute. We think, however, that in considering the charges of the contractors for express tolls paid since August 24, 1905, the referee acted upon a matter no longer open to dispute, but one which had been before settled between the parties. The trust company was advised on August 23d that owing to the large amount of Sunday and night work put upon the job the Brown-Ketchum Company was unwilling to pay express charges. The trust company accordingly directed that everything be sent by express, on account of its "urgent need of this material," and the Brown-Ketchum Company was formally advised to ship the remaining items by express, with the condition that express charges previously paid would later be taken into account, and, if it was found upon investigation that the Brown-Ketchum Company was not responsible for the delay, credit would be given therefor. We think this arrangement by necessary implication excluded any question about the trust company's liability for express charges thereafter paid. The testimony of the trust company's officer, Watkins, indicates that such was appellant's understanding of the agreement, for his only excuse for presenting it to the arbitrator is that he considered that the order to ship by express was made "under duress, in a way," and that the trust company "was forced to order it by express at our expense."

The reason assigned by the arbitrator for holding that the Brown-Ketchum Company should stand the express charges is that the latter was "under contract to furnish this material set in place in the building complete." We think that in so including this item in the award the adjustment of the question previously made by the trust company was overlooked. As near as we can ascertain from the record, the excess express charges over freight expense incurred previous to August 24, 1905, was $225.26. This amount deducted from $1,108.40, the total excess amount of express charges before and after August 24th, leaves an item of $873.14 included in the award which was not properly the subject of arbitration.

It follows from the conclusion reached that the decree of the court below, in wholly setting aside the award, is erroneous. The decree will be reversed, with directions to enter decree in favor of the defendants upon the cross-bill for the amount of the arbitrator's award, but with the proviso that upon appellee's amending its answer to the

cross-bill (to fit the proofs), setting up and claiming the benefit of the error referred to, there be deducted from the amount of the award the sum of $873.14 referred to, and a decree entered in favor of the defendants for the balance.

The appellant will recover the costs of the Circuit Court. The costs of this court will be equally divided.