SMITH et al. v. COPIAH COUNTY et al.

(District Court, S. D. Mississippi. June 14, 1916.)

1. HIGHWAYS ⬉113(1)—CONSTRUCTION—CONTRACTS—MISTAKE.

Where a contract for the construction and graveling of roads, which designated gravel pits along the right of way, declared that plaintiffs had satisfied themselves by personal visit and examination of the work to be done, and that they should not dispute or complain of statements or preliminary estimates of the engineer, or assert that there was any misunderstanding with regard to the depth of excavation or embankment to be made, or the nature or amount of material to be furnished or work to be done, there was no warranty implied from the contract, estimates, or specifications that suitable gravel would be found in all of the places designated.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 348, 351, 355; Dec. Dig. ⬉113(1).]

2. HIGHWAYS ⬉113(1)—CONSTRUCTION—CONTRACTS—OVERHAUL.

Where a contract for the construction and graveling of a road provided for payment per thousand feet in excess of one mile for overhaul of gravel hauled, the overhaul should be calculated from the center of gravity of the pit or place where the haul is made and the center of gravity of work on which distribution of the haul is made, and from the average haul, which is arrived at by adding the minimum haul to the maximum and dividing by two, the distance of one mile should be deducted, which leaves the average distance for which overhaul charge should be made.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 348, 351, 355; Dec. Dig. ⬉113(1).]

3. CONTRACTS ⬉284(4)—PERFORMANCE—DECISION OF ENGINEER.

Where a contract for the construction and graveling of a road declared that in case of ambiguity of expression or doubt the engineer's decision should be final, the decision of the engineer as to doubtful matters of construction is binding on the parties in the absence of fraud or gross mistake.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1326; Dec. Dig. ⬉284(4).]

4. HIGHWAYS ⬉113(1)—CONSTRUCTION—CONTRACTS.

Where the contract for the construction and graveling of a highway provided that all clearing and grubbing should be paid for as an extra at a unit price for each acre actually cleared and grubbed, the contractor is not entitled to payment of a stipulated sum for each acre it is necessary to clear and grub, regardless of the extent of clearing and grubbing each particular acre.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 348, 351, 355; Dec. Dig. ⬉113(1).]

5. DAMAGES ⬉121—BREACH OF CONTRACT.

Where road contractors wrongfully abandoned their agreement, the county, etc., is entitled to recover from them all additional cost for the completion of the work.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 306–308; Dec. Dig. ⬉121.]

6. DAMAGES ⬉140—LIQUIDATED DAMAGES—RIGHT TO RECOVER.

Where road contractors abandoned their work, and it was subsequently completed by their successors long after the time fixed for completion,

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the county is not entitled to liquidated damages for delay in completion at the rate of $20 per day, where such damages amount to $12,600; the amount being disproportionate to the breach.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 404, 405; Dec. Dig. ⊜⊃140.]

Bill by Charles D. Smith, W. L. Smith, and R. L. Leonard against Copiah County, Miss., and others, who cross-complained. Decree as prayed for in cross-bill of defendants.

Decree affirmed 239 Fed. 432, —— C. C. A. ——.

. Caruthers Ewing, of Memphis, Tenn., and R. N. Miller, of Hazelhurst, Miss., for plaintiffs.

J. S. Sexton and H. J. Wilson, both of Hazelhurst, Miss., for defendants.

NILES, District Judge. Plaintiffs, a partnership composed of C. D. Smith, W. L. Smith, and R. L. Leonard, all of Memphis, Tenn., some time in 1911, entered into a contract with the road commissioners of Copiah county, Miss., to construct and gravel certain roads in said county. Plaintiffs, under the contract, proceeded with the work for several months, until such difference arose between the parties that plaintiffs abandoned the work. Afterwards plaintiffs filed their bill against Copiah county, its board of supervisors, and the road commissioners of district No. 1 of said county, seeking an injunction restraining defendants from instituting any action at law against them by reason of the abandonment of the work, a cancellation of the contract upon the grounds that it had been entered into by misrepresentation of defendants or under a mutual mistake as to the location of the gravel, and a decree against defendants for whatever amount might be found due plaintiffs on an accounting to be determined by the appointment of a special master.

Substantially as shown by the bill, it is contended upon the part of plaintiffs that in making their bid and entering into the contract they accepted as true the representation, made in the specifications, that suitable and satisfactory gravel would be found at the pits as located on the profile attached to the specifications; that the location of the gravel pits in road building was a vital matter as affecting the cost of building; and that the engineer of the road commissioners, during the progress of the work, would not accept, as suitable, gravel from a number of these pits, and also no gravel was found in a great number. This so enhanced the cost of the work to plaintiffs, they demanded that defendants pay all added cost which resulted from gravel not being found at the places designated in the specification, which demand was refused.

Plaintiffs insist that, had gravel been found as designated, there would have been little, if any, overhaul, and as plaintiffs fixed in their bid an extremely low overhaul charge, they were thus subjected to serious hardship. Thereupon there arose a difference between the parties over the construction of the "overhaul" item in the contract, plaintiffs contending that an average distance of more than one mile

from pits (the overhaul allowance being for 1,000 feet in excess of one mile) was to be ascertained by adding the length of haul from each pit and dividing the result by the number of pits from which such hauls had been made, thus getting the average, and that to ask in excess of one mile the overhaul charge attached.

Plaintiffs further contend that they were to receive so much per acre for "cleaning and grubbing," and that this charge attached to every acre which it was necessary to clear and grub, regardless of the extent of clearing and grubbing on any particular acre.

Defendants answered, denying the averments of the bill, and filed a cross-bill seeking relief for added costs in completing the roads occasioned by plaintiff's abandonment of the work before completion, together with a certain sum as liquidated damages, at so much per day, dating from the contract with plaintiffs for completion and the day upon which it was actually completed, also upon a certain overpayment to plaintiffs on clearing and grubbing.

Plaintiffs filed an answer to the cross-bill, denying its averments. On the issue made by the pleadings, proof was taken, and the entire cause is now before the court for decision.

Under the contract, defendants were to furnish plaintiffs, free of charge,

"rights of way, borrow pits, waste ground, and gravel quarries that may be necessary in the construction of this work, and to pay plaintiff in the manner provided under the specifications the following unit prices for all work done under the said plans and specifications:

| | | |
|---|---|---|
| For clearing and grubbing.......................... | $50.00 | per acre |
| For earth excavation (free haul) 200 ft............. | .21 | per cu. yd. |
| For each 100 ft. overhaul.......................... | .01½ | per cu. yd. |
| For gravel surfacing, complete, including quarrying, loading, hauling (one mile average) placing, rolling, spreading and preparation of subgrade...... | .22½ | sq. yd. |
| | (finished measure) " | |

A further clause provides:

"Overhaul for all gravel hauled on any one road an average distance of more than one mile, from pits, for each one thousand feet in excess of one mile, 7 cents per cubic yard."

The contract further provided that:

"Parties of the second part [plaintiffs] agree that they have satisfied themselves by personal visit and examination of the work to be done under this contract, and the plans and specifications of the George Company, engineers, Memphis, Tenn., and that they shall not at any time dispute or complain of statements or preliminary estimates of the engineer, or assert that there was any misunderstanding with regard to the depth of excavation or embankment to be made, or the nature or amount of material to be furnished or work to be done," etc.

In the specifications, made a part of the contract, the page of "Contents" embraces "Engineers' Estimate Gravel Pits," referring to Appendix B, page 1, which is headed "Gravel Pits.' On the page preceding there appears the words, "List of Gravel Pits." Under "Gravel Pits" there follows some 45 or 50 "pits" or locations containing gravel,

of a quality good, bad, and indifferent; quite a number of the locations being made indications, appearances, and probabilities, the locations usually giving the name of the owner.

C. D. Smith, the senior partner in plaintiff's firm, was the ruling spirit, and thus states their cause of complaint, which is really the only question before the court: He says that plaintiffs were able and willing to complete the contract, and at the contract price, if the gravel pits had been located as stated in the specifications, and that the real difference between the parties, which resulted in the abandonment of the work, was the right of the contractors to rely on the location of the gravel pits. The dispute as to the correct construction of the clause relating to "overhaul" follows, also as to the "grubbing and clearing."

Upon the question of location of gravel pits, it is contended on the part of the plaintiffs that a bidder on the road contract, to quote plaintiffs' counsel,

"would naturally have understood, and was entitled to understand, that the gravel from the particular pits designated on the specifications would be suitable for the purpose and satisfactory to the engineer. By the mere act or fact of designating at specified points and places gravel pits, the engineer, in effect, asserted that he had examined these pits and that the gravel found therein was of that quantity which would fill the requirements of the proposed contract and plans and specifications thereto attached. He was to judge of the quality of this gravel, and, by designating that gravel was to be found in certain pits and at certain places, he in effect designated that particular gravel as that which could be used by the plaintiffs in constructing the road and highway. It is no answer to say that unsuitable and unfit gravel was in one or more of these pits. Gravel, unless fit and suitable, was not being dealt with at all. It was no more intelligent to designate unfit gravel as located at a particular place than for the engineer to have designated pumpkin seed to be encountered at a particular point or place. When he designated a gravel pit, in legal effect he designated a pit containing gravel which would answer the purposes and fulfill the requirements of the contract."

Continuing:

"* * * Not only did the engineer certify to the preserve of suitable and satisfactory gravel in each designated pit, but when he went further, to say how much gravel was in each particular pit, he clothed the statement with an air of certainty and a degree of care as to investigation that it might not otherwise have had."

And the reason the gravel pits were so designated was to influence bidders by furnishing information upon which they could rely.

Defendants take the position that plaintiffs did not rely on the statements in the specifications with reference to gravel pits and location as a warranty that the pits designated contained gravel answering the purposes of the contract, for the reason that the agreement of the road commissioners was to furnish gravel quarries, and did not undertake to name or locate the same, any more than it undertook to name and locate the rights of way, borrow pits, etc., and that under the "Summary of Work under These Specifications" plaintiffs were only required to "furnish gravel in pits"; that the gravel pits described in the specifications were only the engineer's estimates, and the description as to quality, quantity, and ownership should have shown any

prudent bidder that they were mere estimates; and, finally, that bidders were amply protected by an overhaul clause against failure of the gravel at any point designated on the estimates; furthermore, that plaintiffs had personally visited the scene, and satisfied themselves of the work to be done, and agreed not to dispute or complain of statements or preliminary estimates of the engineer, or that there was any misunderstanding in regard to the materials furnished or work to be done.

From the record, it appears that at least one member of plaintiffs' firm could not be likened to a "shrinking debutante" as applied to high society in the contracting world, as for 27 years he has been engaged in railroad construction, subway building, municipal work, and road building, bequeathing to posterity, as monuments to his constructive talent and ability, many of our largest railway systems, subways, and roads. Associated with him were his two partners, also experienced in the contracting field. This firm, at least the two Smiths, C. D. and W. L., were so prominent in their chosen field that counsel for both parties "agreed" that this firm is "one of the largest in the Southern States."

Defendants were experienced business and professional men, and were advised and represented by their engineer. This engineer, Mr. George, had had considerable experience and occupied an honorable position in his profession.

[1] From an examination of the contract between the parties, taking into consideration the experience of plaintiffs, the circumstances surrounding and leading up to the entering of the contract, it is difficult for the court to take the view that plaintiffs entered into it under a mistake or misrepresentation, or that there is any warranty, implied from the contract, estimates or specifications, that suitable gravel would be found in the places designated, but that plaintiffs did satisfy themselves by personal visit and examination, agreed to abide by it, and entered into the contract with open eyes. Nor have plaintiffs established their contention that the engineer and one of the commissioners assured them, before the contract was let, that practically all the gravel would be within a one mile haul.

[2] The overhaul provision of the contract has been heretofore quoted, and the position taken by plaintiffs as to their construction of same. Defendants' engineer, Mr. George, upon this point testifies as follows:

"As I read the specifications which I made to cover this job, I don't see how there could be any question as to what was meant. Overhaul is a matter of contract; there are several different methods in figuring it, some popular with the engineers on some railroads, and other methods with others; that's entirely a matter of contract as to which method is used; the method I have always used, and I tried to explain clearly, and I think that I did, in these specifications, is to calculate the center of gravity of pit or place from which the haul is made, and the center of gravity of work on which distribution of the haul is made, then deduct from this average haul, the average haul which was arrived at by adding the minimum haul to the maximum haul and divide by two, deducting 5,280 feet (or one mile), which then leaves the distance, the average distance, haul for which an overhaul charge could be made. Of course, the deducting of the free haul of 5,280 feet (or one mile) does not mean that the overhaul would not be paid on that mile as well as the others; this is taken

care of by the fact that the average haul of center of gravity is calculated on the entire work, and then the free haul deducted afterwards. I would like to bear out this interpretation. I would like to refer you to page 3 of the detail specifications carrying this work, in which I have very carefully explained how overhaul for earth work should be computed, and this explanation is the same as I have given before. The general wording of the gravel overhaul is the same as for earth overhaul, the only difference being that I do not go quite so fully into an explanation of just how the details of this computation should be handled; but the gravel overhaul, immediately following the earthwork overhaul, it should be apparent to any one that they are to figure the same way. Further, no engineer would undertake to bid on a road job of work, one system of figuring overhaul for his earth work and an entirely different and reverse system of figuring for gravel work."

[3] The court is convinced of the correctness of the position of the engineer just above quoted. In addition, it would seem from the contract that plaintiffs would be bound by the engineer's decision, which provides that:

"In case of ambiguity of expression in the specifications or doubt as to the correct interpretation of the same, the matter shall be submitted to the engineer, whose decision shall be final and binding on both the client and contractor."

It is undoubtedly the law that, where parties agree upon a third party to finally determine questions between them, they are bound, except in case of fraud or gross mistake. Williams v. Mt. Hood R., etc., 57 Or. 251, 110 Pac. 490, 111 Pac. 17, Ann. Cas. 1913A, 177. "Recent cases reaffirm the well-settled rule that where parties to a working contract designate a person who is authorized to determine questions relating to its execution, and stipulate that his determination shall be final and conclusive, both parties are absolutely bound by his determination of those matters which he is authorized to determine, except in case of fraud, or such gross mistake on his part as would necessarily imply bad faith or a failure to exercise an honest judgment." Memphis Trust Co. v. Brown-Ketchum Iron, 166 Fed. 398, 93 C. C. A. 162, citing numerous other cases in note to Williams v. Mt. Hood R., etc., supra.

In the case at bar plaintiffs and defendants designated Mr. George, the engineer, to determine this and like questions. His decision, therefore, was final, except gross mistake or fraud be shown. Certainly there appears not the slightest trace of fraud and no determination which can be characterized as gross mistake.

[4] Coming down to the difference arising in the construction of the "grubbing and clearing" clause of the contract, it was provided in the specifications that:

"All clearing and grubbing shall be paid for as an 'extra,' and the contractor shall bid a unit price per acre for each acre actually cleared and grubbed."

Continuing:

"Trees, saplings, and brush shall be cut close to the ground, all stumps and large roots shall be grubbed from roadways and slopes of cuts, from ditches, from new channels for waterways, if required."

A consideration of the above clauses of the contract, together with the record evidence, is convincing to the court that the engineer cor-

rectly interpreted them and that this contention of plaintiffs is without merit.

Upon a careful review of the pleadings and proof in this case, with the liveliest desire that all parties interested be accorded their rights, mindful of the antagonistic private and public interests involved, realizing that plaintiffs, through adverse weather conditions and perhaps a too hasty preliminary examination of the work, seemingly intrusted to subordinates in its beginning, have suffered some hardships, the court has given the case the attention it merited, endeavoring to lessen, if possible, their losses. The conclusion, however, cannot be escaped that plaintiffs were not justified in abandoning their contract, upon the grounds as stated in the bill of complaint. This conclusion is amply fortified, indeed, made certain, by defendants afterwards having the roads completed by other contractors under the same contract, and construed as defendants construed the contract with plaintiffs. From the foregoing it appears to the court that plaintiffs are not entitled to the relief as prayed in their bill. Such being the case, it follows that cross-complainants must be relieved.

[5] It is considered that any and all additional costs, for completion of plaintiffs' contract, arising from its abandonment, should be assessed against them. These amounts have been stated in the cross-bill and appear to be just and reasonable. From the sum of these amounts, there should be deducted, or plaintiffs given credit for, any amount now retained by defendants on account of estimates, or such amount as was justly due plaintiffs for work allowed and duly approved which is shown to be.

[6] As to the item of $12,600 claimed by defendants as liquidated damages, or damages at the rate of $20 per day from the day fixed by the contract when complainants were to complete the work and the day on which it was actually completed by their successors, the court is of opinion that this forfeiture, in connection with the relief suggested above, is disproportionate to the breach, and should not be allowed.

Let a decree issue in accordance with the foregoing.